Eileen **WHITELEY,** as Executrix of the Estate of Myrtle G. Watton, Deceased, Plaintiff,

v.

**UNITED STATES** of America, Defendant.

No. 5415.

United States District Court
W. D. Washington, N. D.

Feb. 28, 1963.

490

G. Robert Brain, of Merges, Brain & Hilyer, Seattle, Wash., for plaintiff.

Brockman Adams, U. S. Atty., Payton Smith, Asst. U. S. Atty., Seattle, Wash., for defendant.

BEEKS, District Judge.

Myrtle G. Watton died August 22, 1954. Her executrix filed an estate tax return showing a net estate tax payable of $49.81 and that amount was paid on May 27, 1955. The District Director of Internal Revenue thereafter assessed an additional tax which, together with interest, amounted to approximately $41,-000 on the basis that her gross estate should have included the following items:

1. The amount of $7,738.82, on deposit with the Equitable Life Assurance Society pursuant to the terms of its Policy No. 10,181,-318 and supplemental contract No. 190511, as being subject to a general power of appointment in the decedent and includable in her estate under 26 U.S.C.A. § 2041.

2. The amount of $30,601.27, on deposit with the Equitable Life Assurance Society and Mutual Life Insurance Company of New York under policies and supplemental contracts, as having been transferred by decedent during her life, retaining to herself a life estate, and therefore includable in her gross estate under 26 U.S.C.A. § 2036.

3. The amount of $100,799.84, representing decedent's one-half of the community property of herself and her deceased husband, on the premise that this amount had been erroneously deducted on the estate tax return.

The tax was paid by the executrix under protest, claim for refund was filed, and not having been granted, this suit followed.

The case has been fully stipulated. The facts necessary for a decision are found in the admitted facts of the pretrial order and the exhibits which have been presented to the Court as part of the pretrial order.

From the date of their marriage in July 1912, Myrtle and George Watton resided in the State of Washington and remained married until the death of Mr. Watton in March of 1953, approximately one year and five months before the death of Mrs. Watton in August of 1954.

On January 27, 1934, George Watton executed his will which remained without revision until his death. In his will Mr. Watton provided that all of his property, with the exception of certain specific legacies, was to be placed in trust, with the income payable to his wife for life and the remainder to their only daughter.

On that same date, Mrs. Watton executed an agreement wherein she recited that her husband had on that date executed a will in which he left his entire estate in trust with the income payable to her for life and that it was her desire that all of their community property be subject to the terms of that trust. Mrs. Watton, therefore, promised that if Mr. Watton predeceased her leaving a will which in fact created a trust with income payable to her for life, she would immediately transfer to the trustee of such trust all of her interest in their community property. This agreement was signed only by Mrs. Watton.

At various times during the course of the marriage, Mr. Watton purchased with community funds policies of life insurance upon his life, designating Mrs. Wat-

ton as beneficiary. Prior to his death Mr. Watton, pursuant to the terms of the policies, changed the beneficiaries and elected certain modes of settlement under the various settlement options provided. The policies all matured upon the death of Mr. Watton and became payable according to their terms.

One of the policies, Equitable Policy No. 10,181,318, provided for an annuity to Mrs. Watton. The amount due to her upon Mr. Watton's death would be left on deposit with the insurer, interest payable monthly, and Mrs. Watton would have the right of withdrawing, on interest due dates, the entire amount then on deposit or any part thereof, limited only by the provision that no partial withdrawal could be less than $500. The value of the proceeds of this policy at the date of Mrs. Watton's death was $7,738.82.

With slight differences in wording, the settlement options elected by Mr. Watton on all the remaining policies were substantially the same as the option contained in Equitable Policy No. 7,860,282. This policy provided that amounts due to Mrs. Watton upon her husband's death would remain on deposit with the insurer and would be paid to her for life with the remainder to their daughter Eileen Whiteley. At the date of Mrs. Watton's death the proceeds of these remaining policies had a total value of $30,601.27.

On January 26, 1954, nine months after the death of Mr. Watton, Mrs. Watton transferred her one-half interest in the community property of herself and her deceased husband to the trust created by his will retaining only a life interest therein. The value of the interest so transferred by Mrs. Watton was $100,799.84. Following the transfer, Mrs. Watton filed a federal gift tax return covering the transfer. In that return she reduced the amount of the gift by the value of the life estate retained by her.

The Government in its brief concedes that the issue as to whether the amount of $7,738.82 on deposit with the Equitable Life Assurance Society under

Policy No. 10,181,318 should have been included in Mrs. Watton's estate under 26 U.S.C.A. § 2041(a) must be resolved in favor of the plaintiff. The Government concedes that the decided cases have consistently held that a power of appointment over the proceeds of insurance is created at the time the policy is written. That being so, the power of appointment with which we are here concerned was created prior to 1942. Being an unexercised power created prior to 1942, the proceeds subject to the power are not includable in the estate of the power holder. 26 U.S.C.A. § 2041(a)(1).

The issue as to whether the amount of $30,601.27, representing the value of the proceeds of the remaining policies, should have been included in Mrs. Watton's estate under 26 U.S.C.A. § 2036(a)[1] has also been the subject of some concession by the Government. Although the examining agent included the entire commuted value of the proceeds in Mrs. Watton's estate, the Government in its brief concedes that only the one-half which represents the community property interest of Mrs. Watton could be included. The issue as thus limited becomes one as to whether the amount of $15,300.63, one-half of the commuted value of the proceeds, was properly includable in Mrs. Watton's estate.

It is the Government's contention that under the laws of the State of Washington Mrs. Watton had a vested one-half interest in the policies and the proceeds thereof, and that either at the time Mr. Watton changed beneficiaries and elected certain settlement options, or after Mr. Watton's death when Mrs. Watton failed to contest disposition of the proceeds, she made a transfer of her interest to her

daughter Eileen Whiteley, reserving to herself a life interest in the form of an annuity.

On the other hand, plaintiff contends that in order for Mrs. Watton to have made a transfer subject to 26 U.S.C.A. § 2036(a), she would have to have had actual possession of the proceeds and have taken affirmative action to transfer the proceeds to the insurance company and that she never did. Plaintiff argues that Mrs. Watton neither sought to declare an interest in the proceeds by court action, nor signed any documents of transfer, and that the Government's contention that in giving up a remainder interest in the proceeds she made a transfer is inconsistent with the facts and with the wording of the statute. With this line of reasoning the Court cannot agree.

It is clear that under the laws of the State of Washington, insurance or the proceeds of insurance are not mere expectancies or choses in action, but are property; and if the premiums are paid for with community funds, they are community property in which the wife has a vested one-half interest. Occidental Life Ins. Co. v. Powers, 192 Wash. 475, 74 P.2d 27, 114 A.L.R. 531 (1937); California-Western States Etc. v. Jarman, 29 Wash.2d 98, 185 P.2d 494 (1947); Wilson v. Wilson, 35 Wash.2d 364, 212 P.2d 1022 (1949). Further, where the husband has designated his wife as beneficiary, although the policy may give him the right to change the beneficiary, he may not so do without his wife's consent; any designation other than his wife or his estate is void and upon his death his wife may maintain an action to recover the entire amount of

---

1. 26 U.S.C.A. § 2036 reads in pertinent part as follows:
"§ 2036. Transfers with retained life estate (a) General Rule.—The value of the gross estate shall include the value of all property * * * to the extent of any interest therein of which the decedent has at any time made a transfer (except in case of a bona fide sale for an adequate and full consideration in money or money's worth), by trust or otherwise, under

which he has retained for his life or for any period not ascertainable without reference to his death or for any period which does not in fact end before his death—
"(1) the possession or enjoyment of, or the right to the income from, the property, or
"(2) the right, either alone or in conjunction with any person, to designate the persons who shall possess or enjoy the property or the income therefrom."

the proceeds. Occidental Life Ins. Co. v. Powers, supra; In Re Towey's Estate, 22 Wash.2d 212, 155 P.2d 273 (1945).

There is no evidence that Mrs. Watton was unaware that Mr. Watton had changed beneficiaries or elected certain modes of settlement. Indeed, it is presumed that the change of beneficiaries was with her consent. R.C.W. 48.18.440. Even assuming Mr. Watton's action was taken without his wife's consent, after his death she acquiesced in the mode of settlement chosen by him and thereby ratified his acts.

Had Mrs. Watton made an actual written transfer of her interest in the policies to her daughter retaining to herself a life interest, there would be little question but that one-half the value of the proceeds would have been includable in her estate under 26 U.S.C.A. § 2036(a). The Court is of the opinion that it is equally true here where Mrs. Watton in effect made a transfer either by consenting to a transfer made on her behalf by her husband, or by acquiescing in the mode of settlement chosen by him.[2] The right of a wife under Washington law to claim the entire proceeds after her husband's death if he has made a change of beneficiary without her consent, compels this conclusion. Her election not to claim is in practical effect a transfer to others.[3]

■ The Court therefore finds that Mrs. Watton's consent to the change of beneficiary and the settlement option made by her husband, or alternatively her acquiescence therein, was in effect a transfer by her to her daughter of a remainder interest in her one-half of the insurance, retaining to herself a life interest. Consequently, upon her death one-half the value of the proceeds of in-

surance ($15,300.63) should have been included in her estate under 26 U.S.C.A. § 2036(a).

Finally, we reach the issue of whether the amount of $100,799.84, representing decedent's one-half of the community property of herself and her deceased husband, should have been included in her estate.

■ The Government's initial argument on this issue is that plaintiff included this amount in decedent's estate herself by listing it in schedule "G" of the tax return and then proceeded without explanation to deduct it out again in schedule "P"; that therefore because plaintiff has not sustained the burden of justifying that deduction under any applicable statute, the Government must prevail on this issue. The Court is not impressed with this argument. It is obvious from an examination of the tax return that it was the intention of the person preparing it not to include the $100,799.84. The amount was listed in schedule "G" and immediately subtracted out again in schedule "P". To be sure, the proper method would have been to list the amount of the transfer in schedule "G" for disclosure purposes and then subtract it out again so that a net figure of zero would appear on the "total line" for that schedule. Nevertheless, the Court is satisfied that the plaintiff was not claiming the benefit of any specific deduction but intended not to include this amount at all.

The Government's second argument on this issue is that this $100,799.84, representing the entire value of the community property interest transferred by Mrs. Watton to the trust created by her husband's will, was properly included in

2. See Estate of Mabel Morton, 12 T.C. 380 (1949). The widow elected to leave with the company insurance proceeds, to which she was entitled as beneficiary of her husband's insurance, receiving only the interest therefrom during her life. It was held that the proceeds remaining at her death were includable in her gross estate under either Sec. 811(c) or Sec. 811(d) of the 1939 Code. See Estate of Joseph Tuohy, Jr., 14 T.C. 245 (1950).

3. See Estate of Selina J. Gray, 14 T.C. 390 (1950). The Tax Court there concluded, however, that where the property was pre-1923 California community property the widow's election to take a life estate under her husband's will did not result in the inclusion of such property in her gross estate at her death.

her gross estate by the examining agent as a transfer with a retained life estate under 26 U.S.C.A. § 2036(a), supra, for which no consideration was received.

Plaintiff argues that since Mrs. Watton's transfer was pursuant to her written promise dated January 27, 1934, it was a transfer for a full and adequate consideration and no part of the $100,-799.84 should have been included in her estate.

There can be no question but that in transferring her one-half of the community property into that trust, Mrs. Watton transferred the property to her daughter retaining a life interest therein for herself. Those were the very terms of the testamentary trust created by Mr. Watton's will. Accordingly, it is clear that without more the transaction falls squarely within the terms of 26 U.S.C.A. § 2036(a).

This brings us to the remaining questions presented. They are: first, whether the transfer was a bona fide sale for such a full and adequate consideration as would place it without the purview of 26 U.S.C.A. § 2036(a); and if not, then second, was there any consideration received on the transfer which must be credited under 26 U.S.C.A. § 2043(a).[4]

In this case Mrs. Watton executed an agreement on the same day that her husband executed his will in which she promised that if he died leaving a will creating a trust from which she was to receive a life income, she would transfer her interest in the community property to the same trust. Ordinarily this type of transaction takes on a somewhat different posture. Usually the husband's will sets up a trust of the entire community property of the parties from which the wife receives a life income, and the remainder of the property goes to the

children. The husband's will then puts the wife to an election as to whether she desires to have her one-half go into such a trust or desires to take her one-half against the terms of the will. If she decides not to transfer her one-half into the trust, she does not receive a life income from the husband's one-half of the community property.

The question of whether the receipt of a life estate in the husband's one-half of the community property constitutes consideration to the wife for her transfer of the remainder interest under 26 U.S.C.A. § 2043(a) received recent attention in Estate of Vardell v. Commissioner, 307 F.2d 688 (5th Cir., 1962). In Vardell the Court held that although it was a question of first impression, based on the analogous cases under the gift tax statute, a life estate in the husband's one-half of the community property constituted consideration to the widow for her transfer under 26 U.S.C.A. § 2043(a). The Court in so holding relied on Commissioner v. Siegel, 250 F.2d 339 (9th Cir., 1957).

The Government does not dispute the general principles set forth above but argues that Mr. Watton's will provided for a trust with income to his wife for life in any event and was not in any way conditioned on her doing anything; hence the giving of the life estate to Mrs. Watton was a gratuity and being a gratuity could not be consideration for Mrs. Watton's transfer pursuant to her written promise made contemporaneously with Mr. Watton's will.

The Court does not agree with the position taken by the Government on this issue. It is true that Mr. Watton's will was not in any way conditional. That does not necessarily mean, however, that the disposition of his property in the

---

4. 26 U.S.C.A. § 2043(a) reads in pertinent part as follows:

"§ 2043. Transfers for insufficient consideration

"(a) In General.—If any one of the transfers, trusts, interests, rights, or powers enumerated and described in sections 2035 to 2038, inclusive, and section 2041 is made, created, exercised, or

relinquished for a consideration in money or money's worth, there shall be included in the gross estate only the excess of the fair market value at the time of death of the property otherwise to be included on account of such transaction, over the value of the consideration received therefor by the decedent."

manner indicated in that will was wholly gratuitous. A will is an ambulatory instrument and has no effect as a will until the death of the testator. Mr. Watton could have at any time prior to his death revoked or revised his will to eliminate any provision for Mrs. Watton. On the same day that this will was executed Mrs. Watton made a promise in writing that she would transfer her one-half of the community property to any trust created by the will of Mr. Watton which provided that she receive a life estate. When Mr. Watton subsequently died leaving the same will in effect, Mrs. Watton made the transfer according to her written promise. Mrs. Watton was obligated by law to make such transfer into that trust and the trustee could have compelled her so to do. Mrs. Watton's written promise constituted an offer of a unilateral contract calling for the performance of an act by Mr. Watton. Mr. Watton was under no obligation to accept this offer; he was under no obligation to leave her any interest in his one-half of the property. However, he did perform the requested act thereby accepting the offer and binding Mrs. Watton to her promise. The consideration flowing to Mr. Watton or to his estate was the promise of Mrs. Watton, and the consideration flowing to Mrs. Watton was the performance of the act requested in the offer. The circumstances surrounding the contemporaneous execution of the will and the written promise and the inferences to be drawn therefrom indicate that there was an element of "bargained for" consideration present.

The Government in support of its position relies upon the case of Giannini v. Commissioner, 148 F.2d 285 (9th Cir., 1945). In that case, A. P. Giannini, his wife and their three children owned all of the assets of what had been, prior to dissolution, the family business. An *inter vivos* trust was created into which the parents placed approximately 70% of the assets and into which the children placed approximately 10% each. The trust provided that each child was to receive one-third of the income for life.

Upon the death of one of the children the Commissioner included the 10% interest previously transferred in his estate under the forerunner of 26 U.S.C.A. § 2036 (a). The argument against inclusion was that the value of the life estate received by the decedent from his parents' contribution exceeded the value of the property transferred by him and therefore there was full and adequate consideration for the transfer. The Court held that there was no consideration at all received by the parents for their transfer and that there was no consideration received by the decedent for the fact that he received more than he transferred resulted not from bargaining but from the parents' largess in donating a substantial sum to their children.

The transaction involved in Giannini is, however, distinguishable from that involved here. The primary purpose of the trust was to permit better handling of the assets and the secondary purpose was to enable the parents to make provision for their children. There was not one iota of evidence that could lead anyone to the conclusion that there had been any element of "bargained for" consideration. Indeed, the only evidence was to the contrary, indicating that the children had on the trust instrument acknowledged the "gifts" from their parents.

It is true that in this case at the time of Mrs. Watton's transfer she filed a gift tax return with respect to the transfer. It does not follow, however, that plaintiff is estopped to claim that the transfer was for consideration. The gift tax return is at best an admission against interest and not conclusive. Nourse v. Riddell, 143 F.Supp. 759 (S.D.Cal.1956). The Court finds that irrespective of the filing of the gift tax return, partial consideration did exist for the transfer.

Accordingly, the Court holds that the value of the property transferred by Mrs. Watton on January 26, 1954, computed as of the date of her death, was includable in her gross estate under 26 U.S.C.A. § 2036(a) but that the value of the life estate which she received in Mr. Watton's one-half of the community property at his

death must be credited against such amount under the provisions of 26 U.S.C.A. § 2043(a).

Neither the pretrial order nor the exhibits submitted as evidence indicate the exact value of Mr. Watton's one-half of the property on the date of his death in 1953. Thus the Court is unable to make any computation as to the value of Mrs. Watton's life estate therein. The parties should be able to work out such computation by agreement. If such is impossible the Court will decide the matter upon notice by either party.[5]

---

5. The pretrial order entered in this case provides that the parties will compute the amount to be recovered and provide the Court with an agreed amount for the purpose of entry of judgment. Only in the event the parties cannot agree on the proper method of computation will the question of the dollar amount of the judgment be submitted to the Court.