**George S. GRADOW, Executor of Estate of Betty E. Gradow, Deceased, Plaintiff,**

v.

**The UNITED STATES, Defendant.**

No. 524–84T.

United States Claims Court.

Feb. 26, 1987.

Melvin H. Morgan, San Francisco, Cal., for plaintiff.

Jay G. Philpott, Jr., with whom were Asst. Atty. Gen. Roger M. Olsen, Mildred L. Seidman, and Robert W. Metzler, Washington, D.C., for defendant.

### OPINION

BRUGGINK, Judge.

This case raises an issue with respect to whether section 2036 of the Internal Revenue Code of 1954 requires certain property in which decedent Betty Gradow had a life interest to be included in her gross estate. Both parties have cross moved for partial

summary judgment.[1] For the reasons set out herein, the court concludes that no material facts are in dispute and that defendant is entitled to partial summary judgment.

## I. *Factual Background*

Betty Gradow was born November 19, 1913. She and Alexander Gradow were married December 19, 1935, and at all times were residents of California, a community property state. Alexander died May 9, 1977. By his will Alexander intended to dispose of both his and Betty's interest in their community property. Under the will, Betty was put to an election. If she rejected the will, she would receive only her share of the community property. If she took under the will, she could transfer her part of the community property into a trust consisting of the community property of both spouses, from which she would receive all the income for life. Upon her death the corpus of the trust would go to the couple's son, George Gradow. If she elected under the will, she also would be entitled outright to the couple's residence and Alexander's personal and household effects, and jewelry. Under either alternative, Betty retained her statutory rights to a probate homestead allowance and a widow's allowance.

On February 8, 1978, as executor of Alexander's estate, Betty filed an estate tax return. On February 13, 1979, she filed a written election to take under Alexander's will. Plaintiff asserts that on the effective date of her election, March 6, 1979, the value of Betty's half of the community property, exclusive of residence, was $461,-610.00; that her lifetime income interest in Alexander's half of the community property other than the house was worth $192,-039.00; that the total value of the consideration she received was $300,695.00; and that the value of the remainder interest was $211,367.00. Defendant does not concede the correctness of these figures; however, the parties have stipulated that the value of Betty's share of the community

property exceeded the actuarial value of a life estate in Alexander's share.

Betty died June 30, 1980. On March 24, 1981, George Gradow, as executor, filed an estate tax return. It referred to the trust established under Alexander's will, but did not include any of its assets within Betty's taxable estate, alleging that decedent had executed a "widow's election" upon her husband's death. The life estate retained was asserted to be received in a transfer for full and adequate consideration within the meaning of § 2036.

On November 23, 1983, the Commissioner of Internal Revenue asserted a deficiency in estate taxes of $162,271.00. The Commissioner's audit included in her gross estate the value, as of June 30, 1980, of Betty Gradow's contribution to the trust assets, less $169,815.00. The $169,815.00 was deducted by the Commissioner because it was assumed at that time that this was the value of the consideration received by Betty Gradow and therefore excludable from the gross estate pursuant to the section 2043 of the Internal Revenue Code. George Gradow paid the deficiency along with $78,662.00 in interest. He subsequently filed a claim for refund in the amount of $23,508.00 and a supplemental claim for refund in the amount of $162,-271.00, plus interest. An amended supplemental claim for refund was filed on March 7, 1985. Being unsuccessful before the Commissioner, plaintiff then brought suit in this court.

## II. *Discussion*

Section 2036(a) provides that a gross estate includes the value of all property transferred in which a decedent has retained a life interest. In the case at bar, prior to elections under her husband's will, Betty owned one-half of the couple's community property. When she made her election, she contributed this property to the trust created pursuant to her husband's will. This entitled her to collect the income from the entire trust during her lifetime. Pursuant to the general operation of

---

1. The motions do not address a subsidiary question of the actual value of the testamentary

trust's assets that are to be included in decedent's estate.

§ 2036(a), therefore, the value of the community property she transferred to the trust would be brought into her estate— she made a transfer with a retained life interest.

There is an important exception in § 2036(a), however, and it is the parties' disagreement over its construction and application which is the primary source of their present controversy. Property transferred with a retained life interest is entirely excluded from the operation of § 2036(a) if the transfer is a "bona fide sale for an adequate and full consideration in money or money's worth." In valuing the respective halves of the "sale" which took place upon Betty's election, there is no question that, at a minimum, she received a life income in her husband's share of the community property. The precise question posed by the parties here is whether the consideration flowing *from* her was merely the remainder interest left to George Gradow, or the entire value of the property she placed into the trust, i.e., her half of the community property.

The parties have stipulated that the value of Betty's share of the community property exceeded the value of a life estate in Alexander's share. Consequently, if defendant is successful in its argument on what constituted her consideration, then unless Alexander bequeathed to Betty additional non-community property which, together with the life estate, exceeded the value of her share of the community property, her pre-election property is included at its time-of-death (or alternative date) value in her estate.

If defendant is correct, and Betty received less than she gave up, then under § 2043, her estate is nonetheless entitled to an offset for the consideration she did receive. Case law generally supports the conclusion that this offset includes the actuarial value, at the time of election, of a life estate in Alexander's share. As plaintiff points out, however, the two code sections operate in such a way that if the "adequate and full consideration" excep-

tion of § 2036(a) does not apply, the "time-of-election" valuation of the consideration she received is matched against time-of-death valuation of the included property. If property to be included in the gross estate increases in value after the election, the offset under § 2043 can therefore dramatically lose its impact. Theoretically, a one dollar deficiency of consideration at the time of election would allow taxation in the estate of property, which although transferred, has increased in value far beyond the one dollar difference. Plaintiff is correct therefore that it is critical to maintain a distinction between the calculation of an offset under § 2043 and the determination of adequacy of consideration under § 2036(a).

The issue raised in the motion has been considered by a number of courts, although not on precisely the facts here. The decision most directly on point is that of *Estate of Gregory v. Commissioner*, 39 T.C. 1012 (1963). As in the case at bar, the couple were California residents. The husband died first, leaving the wife to elect whether to take her interest in the community property plus a probate homestead and family allowance, or to receive a life interest in all the couple's community property. She chose the latter and put property worth approximately $65,000.00 into trust along with her husband's share. Based on her life expectancy at that time, the actuarial value of her income interest in the $60,-000.00 contributed by her husband's estate was only $11,926.00. Since the court measured Mrs. Gregory's life interest in her husband's share against the larger amount that she put into the trust, the transaction was not excluded from § 2036 by the "full and adequate consideration" clause. Some consideration was received, however, so the court proceeded to analyze the transaction under § 2043.

Similarly, in *United States v. Past*, 347 F.2d 7 (9th Cir.1965), with virtually no discussion, the court cites *Gregory* for the proposition that the value of what the wife

received must be measured against the value of the property she transferred to the trust. *Id.* at 12.[2]

Plaintiff argues that *Gregory* and *Past* are not direct authority for the proposition in question. He states that the language relied on by defendant is merely dicta, since the wives in those cases received less than they gave up using either plaintiff's or defendant's theory of consideration. Plaintiff asserts that the statements concerning inadequacy of consideration should be viewed under § 2043, rather than § 2036(a). Even assuming plaintiff is correct with respect to the facts in those cases,[3] those courts' adoption of the formula advanced by defendant is unaffected. There is nothing in those opinions to suggest that the applicable law would have been different had the interest the wife received been any larger. Quite the contrary. The references in both courts are plainly in the context of determining adequacy of consideration under § 2036(a), not in determining an offset under § 2043:

> [A] life estate for a 77–year–old woman in $60,635.31 (the amount contributed by Silas) is stipulated to be $11,926.96, and is clearly not adequate and full consideration for the outright transfer [by her] of $65,925.08.

*Gregory*, 39 T.C. at 1017. And in *Past*, the court states:

> The fact alone that the transfer into the trust was part of a property settlement agreement incident to a divorce is not sufficient to make the transfer of the decedent one for an adequate and full consideration within the meaning of Section 2036. The value of what the decedent received under the trust must be measured against the value of the prop-

erty she transferred to the trust. *See Estate of Gregory*, 39 T.C. 1012 (1963). 347 F.2d at 12.

Additional support for defendant's construction appears in the Court of Appeals for the Tenth Circuit decision in *United States v. Allen*, 293 F.2d 916, *cert. denied*, 368 U.S. 944, 82 S.Ct. 378, 7 L.Ed.2d 340 (1961). There the court had before it an analogous, though different issue:

> Our narrow question is thus whether the corpus of a reserved life estate is removed, for federal estate tax purposes, from a decedent's gross estate by a transfer at the value of such reserved life estate. In other words, must the consideration be paid for the interest transferred, or for the interest which would otherwise be included in the gross estate?

*Id.* at 917. In that case, Maria Allen created a trust during her life, reserving three-fifths of the income and directing the rest of the income to her children. The remainder was to go to the children. Advised that retention of the partial life estate would bring a proportionate share of the corpus into her estate at death, she sold to her son the life income interest for slightly more than its actuarial value. She received $140,000.00; he received an income interest for the expected longevity of a 78 year old person, which was valued at $135,000.00. The trial court found that the consideration paid was adequate but the appellate court reversed, finding that the three-fifths of the corpus in which she retained a life interest was what she transferred for purposes of the § 2036(a) exception. The amount included in her estate was thus the value at the time of her death of three-fifths of the corpus, less $140,-000.00. As plaintiff here points out, Maria Allen's initial transfer to the trust bore no

---

**2.** Another case which plaintiff attempts to distinguish is *Vardell's Estate v. Commissioner*, 307 F.2d 688 (5th Cir.1962). The primary question there was how the consideration flowing *to* a widow in a community property election should be measured for purposes of § 2043. Plaintiff is correct that inadequacy of consideration under section 2036(a) is assumed rather than discussed; nevertheless, the plain implication is

that the value of what the wife received is measured against the property she transferred to the trust.

**3.** Presumably plaintiff is arguing that the remainder transferred in those cases was large enough that it would outweigh the life interest in the husband's share in any event.

semblance of an exchange for consideration, and on that basis urges that the decision be ignored. The court disagrees. While *Allen* is distinct (admittedly it did not involve a widow's election or community property) it is not irrelevant. The question is fundamentally the same: at the point of exchange, is the consideration flowing from decedent the value of the *corpus* of the property in which decedent had an interest. In *Allen*, decedent sold a life estate; here Betty Gradow "sold" a remainder. In both instances the defendant presses the same point—what is really being transferred in contemplation of death is the corpus.

The analysis of *Allen* is revealing in its brevity. With very little discussion the court merely concludes:

It does not seem plausible, however, that Congress intended to allow such an easy avoidance of the taxable incidence befalling reserved life estates. This result would allow a taxpayer to reap the benefits of property for his lifetime and, in contemplation of death, sell only the interest entitling him to the income, thereby removing all of the property which he has enjoyed from his gross estate. Giving the statute a reasonable interpretation, we cannot believe this to be its intendment. It seems certain that in a situation like this, Congress meant the estate to include the corpus of the trust or, in its stead, an amount equal in value. *I.e., see Helvering v. Hallock*, 309 U.S. 106, 60 S.Ct. 444, 84 L.Ed. 604; *C.I.R. v. Wemyss*, 324 U.S. 303, 65 S.Ct. 652, 89 L.Ed. 958; *C.I.R. v. Estate of Church*, 335 U.S. 632, 69 S.Ct. 322, 93 L.Ed. 288.

*Id.* at 918. The decisions in *Helvering v. Hallock*, 309 U.S. 106, 60 S.Ct. 444, 84 L.Ed. 604 (1940), and *Commissioner v. Church*, 335 U.S. 632, 69 S.Ct. 322, 93 L.Ed. 288 (1949), which the court in *Allen*

relied on, while not precisely on point, stand for the proposition that the governing principle of § 2036(a) is that certain *inter vivos* transfers should be treated as testamentary transfers.[4] Most directly relevant to the case at bar, the court in *Hallock* stated with respect to § 2036(a) that

[t]he statute taxes not merely those interests which are deemed to pass at death according to refined technicalities of the law of property. It also taxes *inter vivos* transfers that are too much akin to testamentary dispositions not to be subjected to the same excise. By bringing into the gross estate at his death that which the settler gave contingently upon it, this Court fastened on the vital factor. It refused to subordinate the plain purposes of a modern fiscal measure to the wholly unrelated origins of the recondite learning of ancient property law.

309 U.S. at 112, 60 S.Ct. at 448. Similarly, in determining whether a transaction ran afoul of § 2036(a), the Court in *Church* quoted with approval the following language from *Matter of Keeney*, 194 N.Y. 281, 287, 87 N.E. 428, 429 (1909): " 'It is true that an ingenious mind may devise other means of avoiding an inheritance tax, but the one commonly used is a transfer with reservation of a life estate.' " 335 U.S. at 638.

Finally, the *Wemyss* decision relied on in *Allen*, although involving a question of gift tax, contains the instructive statement that "[t]he section taxing as gifts transfers that are not made for 'adequate and full [money] consideration' aims to reach *those transfers which are withdrawn from the donor's estate." Commissioner v. Wemyss*, 324 U.S. 303, 307, 65 S.Ct. 652, 654, 89 L.Ed. 958 (1945) (emphasis added).[5]

In his concurring opinion in *Allen*, Judge Breitenstein states that

---

**4.** A more recent expression of this is found in *United States v. Grace*, 395 U.S. 316, 320, 89 S.Ct. 1730, 1733, 23 L.Ed.2d 332 (1969).

**5.** The court in *Allen* relied on Lowndes, "Cutting the 'Strings' on Inter Vivos Transfers in Contem-

plation of Death," 34 Minn.L.Rev. 57, 70–71 (1949). Lowndes makes a distinction between consideration as a traditional property law concept, and for purposes of estate taxation.

[t]he fact that full and adequate consideration was paid for the transfer of the retained life estate is immaterial. To remove the trust property from inclusion in decedent's estate there must be full and adequate consideration paid *for the interest which would be taxed.* That interest is not the right to income for life but the right to the property which was placed in the trust and from which the income is produced.

293 F.2d at 918 (emphasis added).

While this court is not bound by the results in *Allen, Gregory,* and *Past,* it is persuaded those decisions are correct for two reasons. First, the most natural reading of § 2036(a) leads to the same result. In the context of this case, there is no question that the term "property" in the phrase "The gross estate shall include ... all property ... of which decedent has at any time made a transfer" means that part of the trust corpus attributable to plaintiff. *If* § 2036(a) applies, all of Betty's former community property is brought into her gross estate. Fundamental principles of grammar dictate that the parenthetical exception which then follows—"(except in case of a bona fide sale ...)"—refers to a transfer of that same property, i.e. the one-half of the community property she placed into trust.[6]

Second, treating the portion of the trust corpus attributable to Betty as the consideration flowing from her is most consistent with the purposes of § 2036(a). The net result of Alexander's will and of Betty's election here was to ensure Betty's lifetime needs and then move family property to another generation. If she had not made the election, the property she received upon

Alexander's death would, unless disposed of in a non-testamentary fashion, have been included in her gross estate. By electing under the will she gets the same benefit from the property as if she had kept it, and simultaneously ensures its transfer to her son. If the measurement of consideration flowing from the surviving spouse in these circumstances was limited to the remainder interest, then, as long as the surviving spouse is not very elderly at the time of the election, it would be a simple matter for a couple to avoid estate tax on half of their property. Yet, as taught in *Hallock,* 309 U.S. 106, 60 S.Ct. 444, and *Church,* 335 U.S. 632, 69 S.Ct. 322, this is plainly not how Congress contemplated § 2036(a) would operate. The expectation was that testamentary transfers for less than full consideration would be brought back into the estate for tax purposes.

The requirement that any transfer of property under these circumstances be a bona fide sale "for adequate and full consideration" preserves the purposes of the rest of § 2036(a), because it is based on the expectation that what is being added to the surviving spouse's assets will be subject to inclusion in the gross estate. Even if the consideration is fungible and easily consumed, at least theoretically the rest of the estate is protected from encroachment for lifetime expenditures. The only way to preserve the integrity of the section, then, is to view the consideration moving from the surviving spouse as that property which is taken out of the gross estate. In the context of intra-family transactions which are plainly testamentary, it is not

---

6. Plaintiff points to *Whiteley v. United States,* 214 F.Supp. 489 (W.D.Wash.1963), as an implicitly contrary reading of this language. There the court holds,

Mrs. Walton's consent to the change of beneficiary and the settlement option made by her husband, or alternatively her acquiescence therein, was in effect a transfer by her to her daughter of a remainder interest in her one-half of the insurance, retaining to herself a life interest.

*Id.* at 493. This language is not inconsistent with defendant's position. The issue at that

point in the *Whiteley* opinion was attribution, not valuation. The question was whether the wife's estate could be charged with insurance proceeds on her husband's life left to her daughter, when the policies were bought with community property funds. There is no doubt that in the case at bar, as in *Whiteley,* what is transferred by the wife under property concepts is a remainder interest. That does not preclude a different analysis for estate tax purposes in determining whether adequate consideration is received pursuant to the exception to § 2036(a).

unreasonable to require that, at a minimum, the sale accomplish an equilibrium for estate tax purposes.[7]

Plaintiff argues that this construction precludes any potential application of the bona fide sale exception. While that might be the case if all of a couple's assets are community property, that is not correct in every other circumstance. As plaintiff's counsel conceded at oral argument, it is possible in a community property state to own and transfer non-community property. By bequeathing such assets or by granting or giving up legal rights, the equation can be affected so that the survivor receives more than he or she gives up.

Plaintiff also suggests that defendant's construction would make the bona fide sale exception superfluous:

> [T]he Section 2043 offset would take care of the situation where a transferor who created a $100,000 trust reserving a life estate was fortunate enough to find someone who would buy his remainder interest for $100,000, and there would be no need for exclusion of the transfer from the orbit of Section 2036. Plaintiff submits that the court should not assume that the [Congress] was that sloppy.

Plaintiff's Response Brief at 3. Plaintiff overlooks, however, that the offset provision of § 2043 applies at a later time than the possible exclusion under § 2036(a). Consideration for § 2036(a) is measured as of the time of the sale; perhaps well before death. If at that time the consideration is inadequate, then the property to be included in the gross estate is valued at the time of death. The time-of-transfer consideration received is then offset against it. It is conceivable that property could be excluded under the exception to § 2036(a), and yet its time death value would not have been offset fully under § 2043. The two sections thus serve different functions. In plaintiff's hypothetical, for example, the $100,000.00 may have been transferred in the form of rental property or stocks or bonds, which might significantly appreciate prior to the transferor's death. In that event, the estate would be in a better position under § 2036 than in relying on § 2043.

Plaintiff also relies on the decisions in *Estate of Christ v. Commissioner*, 54 T.C. 493 (1970), *aff'd on other grounds*, 480 F.2d 171 (1973). Based on that court's recitation, apparently the defendant there took the position that

> because the value of the remainder interest transferred exceeded the value of the life estate in Andrew's portion, the transaction did not constitute a bona fide sale for adequate and full consideration in money or money's worth.

54 T.C. at 534. Plaintiff argues that this demonstrates a shift in interpretation of § 2036(a) by defendant.[8] Even if that were the case, the defendant would of course be entitled to change its position, and plaintiff has not argued that the view reflected in that brief passage made its way into a consistent treatment, or into a regulatory construction. In addition, defendant points out, as did plaintiff about the *Past* and

---

7. The predecessor to present § 2036(a) was first adopted as section 202(b) of the Revenue Act of 1916, Pub.L. No. 271, 39 Stat. 756, 777–78 (1916). A significant difference with the present wording of the statute, however, was a lower threshold for testing consideration: "except in case of a sale for a *fair* consideration in money or money's worth." (Emphasis added.) In the Revenue Act of 1926, the present wording of the exception was adopted (along *inter alia* with the predecessor to § 2043). Pub.L. No. 20, 44 Stat. 970 (1926). The Supreme Court has indicated that Congress made similar alterations in other gift and estate tax provisions in order to narrow the scope of tax exemptions. *Merill v. Fahs*, 324 U.S. 308, 312, 65 S.Ct. 655, 657, 89 L.Ed. 963 (1945) (gift tax); *Taft v. Commission-*

*er*, 304 U.S. 351, 356, 58 S.Ct. 891, 894, 82 L.Ed. 1393 (1938) (deduction for obligations against the estate).

8. Plaintiff also points to the IRS's Private Letter Ruling 7806001 which suggests that the defendant had been allowing exclusion of the widow's community property share under similar circumstances. While the facts presented in the letter are limited with respect to identification of parties, the court would observe that the transaction in question did not create a testamentary trust. It was apparently a voting trust agreement with the deceased husband's partners. In any event, such letters are not precedential. 26 U.S.C. § 6110(j)(3).

*Gregory* decisions, that the facts apparently were that the consideration received was inadequate regardless of whether the widow's contribution was viewed as the property otherwise includible in the gross estate, or only the remainder interest. Unlike *Past* and *Gregory*, however, in which the courts indicated their adoption of defendant's position here, the Tax Court and appellate court in *Christ* did not specifically adopt plaintiff's view.[9]

Plaintiff argues that defendant's construction would gut the utility of the "bona fide sales" exception and uses a hypothetical to illustrate his point. Plaintiff's Brief in Response to Defendant's Cross-Motion for Summary Judgment at 2. In the example a 40–year–old man contracts to put $100,000.00 into a trust, reserving the income for life but selling the remainder. Plaintiff points out that based on the seller's life expectancy, he might receive up to $30,000.00 for the remainder, but certainly no more. He argues that this demonstrates the unfairness of defendant insisting on consideration equal to the $100,000.00 put into trust before it would exempt the sale from § 2036(a).

There are a number of defects in plaintiff's hypothetical. First, the transaction is obviously not testamentary, unlike the actual circumstances here. In addition, plaintiff assumes his conclusion by focusing on the sale of the remainder interest as the only relevant transaction. Assuming it was not treated as a sham, the practical effect is a transfer of the entire $100,000.00, not just a remainder. More importantly, however, if plaintiff is correct that one should be able, under the "bona fide sale" exception to remove property from the gross estate by a sale of the remainder interest, the exception would swallow the rule. A young person could sell a remainder interest for a fraction of the property's worth, enjoy the property for life, and then pass it along without estate or gift tax consequences.

Plaintiff's citation of commentaries in support of his construction of the "bona fide sale" exception is not persuasive.[10] Plaintiff argues that these writers reflect the more enlightened view which recognizes that if the surviving spouse permits the income to accumulate and compound, then if the spouse does not die before his or her expected span of years, the taxable estate would grow to equal the surviving spouse's part of the corpus previously transferred to the trust. Initially, the court would observe that other commentaries[11] take a contrary view. More impor-

---

9. Plaintiff also relies on the following language of the court of appeals in *Christ*:

> It is therefore to the advantage of the taxpayer to have a high value assigned to the right to receive income, for three reasons: (1) a sufficiently high value assures that the transfer will be a "bona fide sale," rendering § 2036 inapplicable and removing the trust corpus from the gross estate altogether; (2) a high value will also reduce the size of the gross estate through the operation of § 2043....

480 F.2d at 172. The language omitted by plaintiff is important because it points to the different issue present in *Christ*:

> (3) a high value will equal a high "purchase price" for the life income and thereby support larger amortization deductions from that income.

*Id.* What the court in *Christ* was evaluating at that point was consideration received from the husband's estate for income tax purposes, not with respect to whether there was adequate and full consideration pursuant to the exception to § 2036(a). Two other things bear noting. First, *Christ* relied upon *Past*. Apparently the Ninth Circuit saw no contradiction with its earlier decision. More importantly, the quoted language is not inconsistent with treating the consideration flowing from the wife as the property she transferred into trust. Apparently plaintiff's argument on this point is based on the assumption that if defendant's position is correct, then the exception becomes meaningless, whereas the court in *Christ* plainly assumed that it could be successfully applied. Plaintiff's reliance on *Christ* is misplaced, however, since, as discussed at page 814, there can be circumstances in which the exception applies.

10. Morrison, "The Widow's Election: The Issue of Consideration," 44 Tex.L.Rev. 223 (1965); Miller and Martin, "Voluntary Widow's Election: Nationwide Planning for the Million Dollar Estate," 1 Cal.West.L.Rev. 63 (1965).

11. Johanson, "Revocable Trusts, Widow's Election Wills, and Community Property: The Tax Problems," 47 Tex.L.Rev. 1247 (1969); Lowndes, "Consideration and the Federal Estate and Gift Taxes: Transfers for Partial Consideration, Relinquishment of Marital Rights, Family Annui-

tantly however, that reasoning flies squarely in the face of the Supreme Court's analysis as to the assumptions and purposes behind § 2036(a). As discussed previously, the Court has taught that while tax limitation is perfectly legitimate, § 2036(a) is a reflection of Congress' judgment that transfers with retained life estates are generally testamentary transactions and should be treated as such for estate tax purposes. The fond hope that a surviving spouse would take pains to invest, compound, and preserve inviolate all life income from half of a trust, knowing that it would thereupon be taxed without his or her having received any lifetime benefit, is a slim basis for putting a different construction on § 2036(a) than the one heretofore consistently adopted.

Finally, plaintiff argues that the commercial common sense of Betty's selection is that by taking under the will, she was financially better off.[12] The court reserves its ruling on that question. At this point in the development of the case, parties are in apparent disagreement as to the makeup and valuation of the consideration flowing from Alexander's estate at the time of the election. The sole effect of the ruling on the motion for partial summary judgment is to define the consideration flowing from Betty Gradow.

### III. *Conclusion*

For the purposes of evaluating whether plaintiff's election constituted full and adequate consideration within the meaning of § 2036(a), the consideration flowing from Betty Gradow consists of the property which would otherwise have been included in her gross estate by virtue of her retention of a life estate—i.e., her half of the community property.

It is unclear from the briefs and the motions which valuation issues are fully presented in light of the above holding. Accordingly, the case shall proceed subject to Appendix G, RUSCC. The parties are

ties, the Widow's Election, and Reciprocal Trusts," 35 Geo.Wash.L.Rev. 50 (1966).

**12.** As legal support, plaintiff points to *Commissioner v. Siegel*, 250 F.2d 339 (9th Cir.1957).

directed to prepare a joint preliminary status report on or before March 31, 1987, specifically indicating what issues remain to be decided, how existing submissions can be used toward that end, whether further discovery is necessary, and whether the remaining issues can be settled.

It is SO ORDERED.

*Siegel* was a gift tax case, however, and was distinguished later on that basis by the same court in *Past,* 347 F.2d at 13 n. 4.