

1996 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

11-26-1996

# Estate Rose v. Commissioner IRS

Precedential or Non-Precedential:

Docket 95-7643

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_1996

Recommended Citation

"Estate Rose v. Commissioner IRS" (1996). *1996 Decisions.* Paper 32.
http://digitalcommons.law.villanova.edu/thirdcircuit_1996/32

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova
University School of Law Digital Repository. It has been accepted for inclusion in 1996 Decisions by an authorized administrator of Villanova
University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT


No. 95-7643


ESTATE OF ROSE D'AMBROSIO, Deceased,
VITA D'AMBROSIO, Executrix,

Appellant

v.

COMMISSIONER OF INTERNAL REVENUE SERVICE


ON APPEAL FROM THE UNITED STATES TAX COURT
(Tax Court Docket No. 94-06724)


Argued June 4, 1996

Before:  COWEN, NYGAARD and LEWIS, Circuit Judges.

(Opinion Filed: November 26, 1996)


HARVEY R. POE, ESQUIRE (Argued)
Poe & Rotunda
256 Columbia Turnpike
Columbia Commons, Suite 202
Florham Park, NJ 07932
Attorney for Appellant


CHARLES BRICKEN, ESQUIRE (Argued)
GARY R. ALLEN, ESQUIRE
GILBERT S. ROTHENBERG, ESQUIRE
United States Department of Justice
Tax Division
P.O. Box 502
Washington, DC 20044
Attorneys for Appellee


OPINION OF THE COURT


NYGAARD, Circuit Judge.
     Vita D'Ambrosio, executrix of the estate of Rose D'Ambrosio,
appeals from a judgment of the United States Tax Court upholding
a statutory notice of deficiency filed against the estate by the

Commissioner of Internal Revenue. The tax court held that, even though the decedent had sold her remainder interest in closely held stock for its fair market value, 26 U.S.C. § 2036(a)(1) brought its entire fee simple value back into her gross estate. We will reverse and remand with the direction that the tax court enter judgment in favor of appellant.

## I.

The facts in this case have been stipulated by the parties. Decedent owned, inter alia, one half of the preferred stock of Vaparo, Inc.; these 470 shares had a fair market value of $2,350,000. In 1987, at the age of 80, decedent transferred her remainder interest in her shares to Vaparo in exchange for an annuity which was to pay her $296,039 per year and retained her income interest in the shares. There is no evidence in the record to indicate that she made this transfer in contemplation of death or with testamentary motivation. According to the actuarial tables set forth in the Treasury Regulations, the annuity had a fair market value of $1,324,014. The parties stipulate that this was also the fair market value of the remainder interest.

Decedent died in 1990, after receiving only $592,078 in annuity payments and $23,500 in dividends. Her executrix did not include any interest in the Vaparo stock when she computed decedent's gross estate. The Commissioner disagreed, issuing a notice of deficiency in which she asserted that the gross estate included the full, fee simple value of the Vaparo shares at the date of death, still worth an estimated $2,350,000, less the amount of annuity payments decedent received during life. The estate then petitioned the tax court for redetermination of the alleged tax deficiency.

The tax court, relying largely on Gradow v. United States, 11 Cl. Ct. 808 (1987), aff'd, 897 F.2d 516 (Fed Cir. 1990), and Estate of Gregory v. Commissioner, 39 T.C. 1012 (1963), ruled in favor of the Commissioner. Eschewing any attempt to construe the language of either the Code or the applicable Treasury Regulations, the tax court reasoned that the transfer of the remainder interest in the Vaparo stock was an abusive tax avoidance scheme that should not be permitted:

> In the instant case, we conclude that Decedent's transfer of the remainder interest in her preferred stock does not fall within the bona fide sale exception of section 2036(a). Decedent's gross estate would be depleted if the value of the preferred stock, in which she had retained a life interest, was excluded therefrom. Decedent's transfer of the remainder interest was of a testamentary nature, made when she was 80 years old to a family-owned corporation in return for an annuity worth more than $1 million less than the stock itself. Given our conclusion that Decedent did not receive adequate and full consideration under section 2036(a) for her 470 shares of Vaparo preferred stock, we hold that her gross estate includes the date of death value of that stock,

less the value of the annuity.

Estate of D'Ambrosio v. Commissioner, 105 T.C. 252, ___ (1995). The executrix now appeals; we have jurisdiction under 26 U.S.C. § 7482. Both parties agree that our standard of review for this issue of law is plenary.

## II.

Our nation's tax laws have, for several generations, imposed a tax upon decedents' estates. Under 26 U.S.C. § 2033, a decedent's gross estate includes "[t]he value of all property to the extent of any interest therein of the decedent at the time of his death." In addition the Code contains, among other provisions, § 2036(a), which provides, in pertinent part:

> The value of the gross estate shall include the value of all property to the extent of any interest therein of which the decedent has at any time made a transfer (except in case of a bona fide sale for adequate and full consideration in money or money's worth), by trust or otherwise, under which he has retained for his life or for any period not ascertainable without reference to his death or for any period which does not in fact end before his death--
>
> (1) the possession or enjoyment of, or the right to the income from the property[.]

Section 2036(a) effectively discourages manipulative transfers of remainder interests which are really testamentary in character by "pulling back" the full, fee simple value of the transferred property into the gross estate, except when the transfer was "a bona fide sale for adequate and full consideration."

There is no dispute that Rose D'Ambrosio retained a life interest in the Vaparo stock and sold the remainder back to the company. The issue is whether the sale of a remainder interest for its fair market value constitutes "adequate and full consideration" within the meaning of § 2036(a). Appellant argues that it does. The Commissioner takes the position that only consideration equal to the fee simple value of the property is sufficient. Appellant has the better argument.

### A.

The tax court and the Commissioner rely principally on four cases, Gradow v. United States, 11 Cl. Ct. 808 (1987), aff'd for the reasons set forth by the claims court, 897 F.2d 516 (Fed. Cir. 1990); United States v. Past, 347 F.2d 7 (9th Cir. 1965); Estate of Gregory v. Commissioner, 39 T.C. 1012 (1963); United States v. Allen, 293 F.2d 916 (10th Cir. 1961). We find these cases either inapposite or unpersuasive; we will discuss them in chronological order.

In Allen, the decedent set up an irrevocable inter vivos trust in which she retained a partial life estate and gave the remainder (as well as the remaining portion of the income) to her children. Apparently realizing the tax liability she had created

for her estate under the predecessor of § 2036, she later attempted to sell her retained life interest to her son for an amount slightly in excess of its fair market value. After she died, the estate took the position that, because decedent had divested herself of her retained life interest for fair market value, none of the trust property was includable in her gross estate. The Court of Appeals disagreed, holding that consideration is only "adequate" if it equals or exceeds the value of the interest that would otherwise be included in the gross estate absent the transfer. See 293 F.2d at 917. Although acknowledging that the decedent owned only a life estate, which she could not realistically hope to sell for its fee simple value, the court nevertheless rejected the estate's argument, opining:

> It does not seem plausible, however, that Congress intended to allow such an easy avoidance of the taxable incidence befalling reserved life estates. This result would allow a taxpayer to reap the benefits of property for his lifetime and, in contemplation of death, sell only the interest entitling him to the income, thereby removing all of the property which he has enjoyed from his gross estate. Giving the statute a reasonable interpretation, we cannot believe this to be its intendment. It seems certain that in a situation like this, Congress meant the estate to include the corpus of the trust or, in its stead, an amount equal in value.

Id. at 918 (citations omitted).

Allen, however, is inapposite, as the Commissioner now concedes, because it involved the sale of a life estate after the remainder had already been disposed of by gift, a testamentary transaction with a palpable tax evasion motive. This case, in contrast, involves the sale of a remainder for its stipulated fair market value. Nevertheless, we agree with its rationale that consideration should be measured against the value that would have been drawn into the gross estate absent the transfer. As the tax court persuasively reasoned in a later case:

> [W]here the transferred property is replaced by other property of equal value received in exchange, there is no reason to impose an estate tax in respect of the transferred property, for it is reasonable to assume that the property acquired in exchange will find its way into the decedent's gross estate at his death unless consumed or otherwise disposed of in a nontestamentary transaction in much the same manner as would the transferred property itself had the transfer not taken place. . . .
>
> In short, unless replaced by property of equal value that could be exposed to inclusion in the decedent's gross estate, the property transferred in a testamentary transaction of the type described in the

statute must be included in his gross estate.

Estate of Frothingham v. Commissioner, 60 T.C. 211, 215-16 (1973) (emphasis added).

Gregory presents a closer factual analogy to D'Ambrosio's situation. Gregory was a "widow's election" case involving the testamentary disposition of community property. Typically in such cases, the husband wishes to pass the remainder interest in all of the marital property to his children, while providing for the lifetime needs of his surviving spouse. In a community property state, however, half of the marital property belongs to the wife as a matter of law, so he cannot pass it by his own will. To circumvent this problem, the will is drafted to give the widow a choice: take her one-half share in fee simple, according to law, or trust over her half of the community property in exchange for a life estate in the whole. Put another way, she trades the remainder interest in her half of the community property in exchange for a life estate in her husband's half.

In Gregory, the widow exchanged property worth approximately $66,000 for a life estate with an actuarial value of only around $12,000; by the time she died eight years later, the property she gave up had appreciated to approximately $102,000. The tax court compared the $102,000 outflow to the $12,000 consideration and concluded that the widow's election did not constitute a bona fide sale for an adequate and full consideration. 39 T.C. at 1015-16. It also stated that "the statute excepts only those bona fide sales where the consideration received was of a comparable value which would be includable in the transferor's gross estate." Id. at 1016 (emphasis added).

We believe that the Gregory court erred in its analysis, although it reached the correct result on the particular facts of that case. There is no way to know ex ante what the value of an asset will be at the death of a testator; although the date of death can be estimated through the use of actuarial tables, the actual appreciation of the property is unknowable, as are the prevailing interest, inflation and tax rates. Consequently, there is no way to ever be certain in advance whether the consideration is adequate and thus no way to know what tax treatment a transfer will receive. This level of uncertainty all but destroys any economic incentive to ever sell a remainder interest; yet, Congress never said in § 2036 that all transfers of such interests will be taxed at their fee simple value or that those transfers are illegal. Instead, it clearly contemplated situations in which a sale of a remainder would not cause the full value of the property to fall into the gross estate. Without some express indication from Congress, we will not presume it intended to eliminate wholesale the transfers of remainder interests. Therefore, rather than evaluate the adequacy of the consideration at the time the decedent dies, we will compare the value of the remainder transferred to the value of the consideration received, measured as of the date of the transfer. Here, we need not address that valuation issue, because it is stipulated that the fair market value of the stock

was the same on the date of transfer as it was on the date of death.

In Gregory, however, the $12,000 the decedent received was grossly inadequate against the value of the property she transferred, regardless of the valuation date. The court was therefore correct that the transfer was not for adequate and full consideration. Because of that gross inadequacy, however, the holding of Gregory does not extend to the issue now before us: whether, when a remainder is sold for its stipulated fair market value, the consideration received is inadequate because it is less than the fee simple value of the property.

The Past case was factually somewhat different, in that it involved a divorce settlement, but the substance of the transaction was the same as in Gregory: the sale of a remainder in one-half of the marital property in exchange for a life estate in the whole. In that case, however, the court valued the property the divorcing spouse gave up at about $244,000 and the life estate she received at about $143,000; as a result, it held that the consideration was inadequate. 347 F.2d at 13-14. In making these valuations, however, the court took the fee simple value of the trust property and divided it in half. This was analytically incorrect, however, because the divorcing wife never gave up the life estate in her half of the marital property. She contributed only her remainder interest in that half, and that is the value that should have been used in the court's analysis. Alternatively, the Past court could have used the fee simple value of the wife's share, but it would then have needed to measure that against the value of the life estate in both halves of the property. Had the court employed this latter methodology, it would have seen that the $287,000 value of the life estate exceeded the $244,000 she contributed and would have found adequate consideration. Instead, it compared "apples and oranges" and, we believe, reached the wrong result.

## B.

The facts in Gradow were similar to those in Gregory; both are "widow's election" cases. That case is particularly significant, however, because the court focused on the statutory language of § 2036. The court began its analysis, however, with a discussion of Gregory, Past and Allen. While acknowledging that it was not bound by those three cases, the Gradow court found them persuasive, for two reasons: 1) "the most natural reading of § 2036(a) leads to the same result[;]" and 2) their holding is "most consistent with the purposes of § 2036(a)." 11 Cl. Ct. at 813. We will discuss these rationales in turn.

## 1.

We examine first the Gradow court's construction of the statute. It opined that

there is no question that the term "property" in the phrase "The gross estate shall include ... all property ... of which the decedent has at any time made a transfer" means that part of the trust corpus attributable to plaintiff. If § 2036(a) applies, all

> of Betty's former community property is brought into
> her gross estate.  Fundamental principles of grammar
> dictate that the parenthetical exception which then
> follows--"(except in case of a bona fide sale...)"--
> refers to a transfer of that same property, i.e. the
> one-half of the community property she placed into the
> trust.

*Id.* (ellipses in original).  We disagree; although the *Gradow* court's rationale appears plausible, we note that the court, in quoting the statute, left out significant portions of its language.  Below is the text of § 2036, with the omitted words emphasized:

> The value of the gross estate shall include the value
> of all property *to the extent of any interest therein* of which the
> decedent *has at any time made a transfer*
> (except in case of a bona fide sale for an adequate and
> full consideration in money or money's worth), by trust
> or otherwise, under which he has retained for his life
> * * * (1) the possession or enjoyment of, or the right
> to the income from, the property * * *

After parsing this language, we cannot agree with the *Gradow* court's conclusions that "property" refers to the fee simple interest and that adequate consideration must be measured against that value.  Rather, we believe that the clear import of the phrase "to the extent of any interest therein" is that the gross estate shall include the value of the remainder interest, unless it was sold for adequate and fair consideration.

In addition to § 2036, Treas. Reg. § 20.2036-1 also addresses this issue.  It provides, in pertinent part (emphases added):

> (a) In general.  A decedent's gross estate
> includes under section 2036 the value of any *interest* in property
> *transferred* by the decedent . . . except to
> the extent that the transfer was for an adequate and
> full consideration in money or money's worth if the
> decedent retained or reserved (1) for his life . . .
>
> (i) The use, possession, right to the income, or
> other enjoyment *of the transferred property*, . . .

Appellant refers us to the emphasized words "interest" and "transferred" in § 20.2036-1(a) and argues that "adequate and full consideration" must be measured against the interest transferred.  The Commissioner, on the other hand, looks at the phrase "of the transferred property" in § 20.2036-1(a)(i) and concludes that, because one cannot retain any lifetime interest in a remainder, "property" must refer to the fee simple interest.

The regulation, unfortunately, is not exactingly drafted and does not parse "cleanly" under either party's interpretation. The Commissioner is of course correct that one cannot enjoy any sort of life interest in a remainder.  On the other hand, appellant validly asks why, if the drafters of the regulation

meant to include the full value of the property, they referred to the value of any "interest in property transferred." On balance, we believe that, if some words of the regulation must be construed as surplusage, it is more reasonable and faithful to the statutory text to render inoperative the word "transferred" in § 20.2036-1(a)(i) than it would be to strike "interest" in the first part of the section. We think it is likely that, although the choice of verbiage was less than precise, the drafters meant merely to refer to the "transferred" property so as to distinguish it from other property owned by the estate. It strains the judicial imagination, however, to conclude that the drafters used the term of art "interest in property" when they meant simply "property."

                                   2.

The Gradow court also believed that its construction of § 2036 was "most consistent" with its purposes. 11 Cl. Ct. at 813. The tax court in this case, although recognizing that the issue has spawned considerable legal commentary and that scholars dispute its resolution, 105 T.C. at ___, was persuaded that decedent's sale of her remainder interest was testamentary in character and designed to avoid the payment of estate tax that otherwise would have been due. Id. at ___. It noted particularly that the transfer was made when decedent was eighty years old and that the value of the annuity she received was over $1 million less than the fee simple value of the stock she gave up. Id. Again, we disagree.

We too are cognizant that techniques for attempting to reduce estate taxes are limited only by the imagination of estate planners, and that new devices appear regularly. There is, to be sure, a role for the federal courts to play in properly limiting these techniques in accordance with the expressed intent of Congress. Under long-standing precedent, for example, we measure "consideration" in real economic terms, not as it might be evaluated under the common law of contract or property. E.g., Commissioner v. Wemyss, 324 U.S. 303, 65 S. Ct. 652 (1945) (promise of marriage insufficient consideration, for gift tax purposes, for tax-free transfer of property); Merrill v. Fahs, 324 U.S. 308, 65 S. Ct. 655 (1945) (same). Likewise, when the transfer of the remainder interest is essentially gratuitous and testamentary in character, we focus on substance rather than form and require that the full value of trust property be included in the gross estate, unless "the settlor absolutely, unequivocally, irrevocably, and without possible reservations, parts with all of his title and all of his possession and all of his enjoyment of the transferred property." See Commissioner v. Estate of Church, 335 U.S. 632, 645, 69 S. Ct. 322, 329 (1949) (gratuitous transfer of remainder in trust for family members with possibility of reverter to estate); accord Helvering v. Hallock, 309 U.S. 106, 110, 60 S. Ct. 444, 447 (consolidation of three cases involving "dispositions of property by way of trust in which the settlement provides for return or reversion of the corpus to the donor upon a contingency terminable at his death").

On the other hand, it is not our role to police the techniques of estate planning by determining, based on our own

policy views and perceptions, which transfers are abusive and which are not. That is properly the role of Congress, whose statutory enactments we are bound to interpret. As stated supra, we think the statutory text better supports appellant's argument.

Even looking at this case in policy terms, however, it is difficult to fathom either the tax court's or the Commissioner's concerns about the "abusiveness" of this transaction. A hypothetical example will illustrate the point.

A fee simple interest is comprised of a life estate and a remainder. Returning to the widow's election cases, assume that the surviving spouse's share of the community property is valued at $2,000,000. Assuming that she decides not to accept the settlement and to keep that property, its whole value will be available for inclusion in the gross estate at death, but only as long as the widow lives entirely on the income from the property. If she invades principal and sells some of the property in order to meet living expenses or purchase luxury items, then at least some of that value will not be included in the gross estate. Tax law, of course (with the exception of the gift tax), imposes no burdens on how a person spends her money during life.

Next, assume that same widow decides to sell her remainder and keep a life estate. As long as she sells the remainder for its fair market value, it makes no difference whether she receives cash, other property, or an annuity. All can be discounted to their respective present values and quantified. If she continues to support herself from the income from her life estate, the consideration she received in exchange for the remainder, if properly invested, will still be available for inclusion in the gross estate when she dies, as Frothingham and Gregory require. On the other hand, if her life estate is insufficient to meet her living expenses, the widow will have to invade the consideration she received in exchange for her remainder, but to no different an extent than she would under the previous hypothetical in which she retained the fee simple interest. In sum, there is simply no change in the date-of-death value of the final estate, regardless of which option she selects, at any given standard of living.

On the other hand, if the full, fee simple value of the property at the time of death is pulled back into the gross estate under § 2036(a), subject only to an offset for the consideration received, then the post-sale appreciation of the transferred asset will be taxed at death. Indeed, it will be double-taxed, because, all things being equal, the consideration she received will also have appreciated and will be subject to tax on its increased value. In addition, it would appear virtually impossible, under the tax court's reasoning, ever to sell a remainder interest; if the adequacy of the consideration must be measured against the fee simple value of the property at the time of the transfer, the transferor will have to find an arms-length buyer willing to pay a fee simple price for a future interest. Unless a buyer is willing to speculate that the future value of the asset will skyrocket, few if any such sales will take place.

Another potential concern, expressed by the Gradow court, is that, under appellant's theory, "[a] young person could sell a remainder interest for a fraction of the property's [current, fee simple] worth, enjoy the property for life, and then pass it along without estate or gift tax consequences." 11 Cl. Ct. at 815. This reasoning is problematic, however, because it ignores the time value of money. Assume that a decedent sells his son a remainder interest in that much-debated and often-sold parcel of land called Blackacre, which is worth $1 million in fee simple, for its actuarial fair market value of $100,000 (an amount which implicitly includes the market value of Blackacre's expected appreciation). Decedent then invests the proceeds of the sale. If the rates of return for both assets are equal and decedent lives exactly as long as the actuarial tables predict, the consideration that decedent received for his remainder will equal the value of Blackacre on the date of his death. The equivalent value will, accordingly, still be included in the gross estate. Moreover, decedent's son will have only a $100,000 basis in Blackacre, because that is all he paid for it. He will then be subject to capital gains taxes on its appreciated value if he decides to ever sell the property. Had Blackacre been passed by decedent's will and included in the gross estate, the son would have received a stepped-up basis at the time of his father's death or the alternate valuation date. We therefore have great difficulty understanding how this transaction could be abusive.

On this appeal, the Commissioner likewise argues for the Gradow rule on the rationale that "the retained life interest is in closely held stock whose dividend treatment is subject to the control of decedent and her family. In such circumstances, the amount of the dividend income that decedent was to receive from her life income interest in the Vaparo preferred stock was susceptible of manipulation[.]" Commissioner's Brief at 33. There is no evidence, however, that the Vaparo dividends weremanipulated, and the Commissioner directs us to no authority that we should presume so. In addition, implicit in her argument is the proposition that the life estate was overvalued by the executor and the remainder correspondingly undervalued. Such a position, however, is directly contrary to the Commissioner's own stipulation regarding the values of those interests.

The Commissioner also asserts that the D'Ambrosio estate plan is "calculated to deplete decedent's estate in the event that she should not survive as long as her actuarially projected life expectancy." Commissioner's Brief at 34-35. We note first that the Commissioner does not argue that decedent transferred her remainder in contemplation of imminent death under such circumstances that the tables should not be applied. Leaving aside the untimely death of Rose D'Ambrosio, any given transferor of a remainder is equally likely to outlive the tables, in which case she would collect more from her annuity, the gross estate would be correspondingly larger and the Commissioner would collect more tax revenue than if the remainder had never been transferred.

Several courts have followed the holding in Gradow, but none of their opinions provides any cogent analysis that persuade us it is sound.  See Pittman v. United States, 878 F. Supp. 833, 835 (E.D.N.C. 1994) (applying Gradow without analysis); Wheeler v. United States, No. SA-94-CA-964, 77 A.F.T.R.2d 96-1405, 96-1411, 1996 WL 266420, *4-*5 (W.D. Tex. Jan. 26, 1996) (similar).  Two other courts have questioned the soundness of Gradow, but have either applied it reluctantly or decided the case on other grounds.  See Parker v. United States, 894 F. Supp. 445, 447 (N.D. Ga. 1995); Estate of McLendon v. Commissioner, Nos. 20324-90, 20325-90, T.C. Memo. 1993-459, 66 T.C.M. (CCH) 946, T.C.M. (P-H) ¶ 93,459, 1993 WL 391134, n.24 and accompanying text (Tax Ct. Sept. 30, 1993), rev'd on other grounds, 77 A.F.T.R.2d 666 (5th Cir. 1995).

The holdings of Gradow and the earlier cases such as Gregoryhave inspired considerable legal commentary, most of it critical. See Jacques T. Schlenger et al., Cases Addressing Sale of Remainder Wrongly Decided, 22 Estate Planning 305 (1995) (reproducing Professor Pennell's remarks criticizing Pittman as a "mindless" decision); 2 A. James Casner, Estate Planning § 6.15.2, at 6-146-50, 6-158 (Supp. 1995) (Professor Casner, criticizing Gradow court as lacking understanding of future interests, economics and time value of money); Jacques T. Schlenger et al., Property Included in Estate Despite Sale of Remainder Interest, 23 Estate Planning 132 (1996) (criticizing reasoning of tax court in D'Ambrosio); Richard B. Stephens et al., Federal Estate and Gift Taxation ¶ 4.08[1], at 4-138 (6th ed. 1991) (stating that payment of full consideration for remainder interest alone is sufficient under § 2036, but noting Gregory, Past and Gradow in a footnote); Peter M. Weinbaum, Are Sales of Remainder Interests Still Available in Light of a New Decision?, 14 Estate Planning 258 (1987) (criticizing Gradow for quoting and analyzing § 2036(a) out of context and for ignoring the value of the life estate in the wife's community property as consideration received in the transfer).  As discussed supra, we find this criticism to be well-taken.

III.

Because we conclude that the tax court erred as a matter of law when it determined that the consideration received by Rose D'Ambrosio for her remainder interest was not adequate and full, we will reverse and remand for it to enter judgment in favor of the estate.

Estate of Rose D'Ambrosio v. Commissioner of Internal Revenue
No. 95-7643

COWEN, Circuit Judge, dissenting.

Today the majority holds that a tax-avoidance approach previously considered "too good to be true" can, at least in limited circumstances, actually be true.  I respectfully dissent. The tax court's opinion is supported by well-established case law and the plain language of the Internal Revenue Code.  It should be affirmed.

I.

The value of a gross estate includes the value of all property held by the decedent on the date of death. I.R.C. § 2033. Pursuant to section 2036(a), for federal estate tax purposes the gross estate also includes any property that is the subject of an inter vivos transfer and in which the taxpayer reserves an income interest in that property until death. The sole exception authorized by section 2036(a) is a "bona fide sale" in which the transferor receives "adequate and full consideration" in exchange for the transferred property. I.R.C. § 2036(a). The majority holds that under section 2036(a), "adequate and full consideration" must be provided merely for that portion of the taxpayer's property interest actually transferred, rather than for the full value of the property that is the basis for the ongoing income interest.

The majority excludes from the computation of "full and adequate consideration" the value of decedent's life interest in the transferred stock, on the grounds that D'Ambrosio retained that interest. The intended purpose of section 2036 is to prevent decedents from avoiding estate taxes by selling their property to a third party but retaining the benefits of ownership during their lives. It includes in a decedent's gross estate the date-of-death value of

> all property to the extent of any interest therein of which the decedent has at any time made a transfer (except in the case of a bona fide sale for an adequate and full consideration in money or money's worth), by trust or otherwise, under which he has retained for his life . . . the possession or enjoyment of, or the right to the income from, the property.

I.R.C. § 2036(a). When a taxpayer makes a transfer with a retained life interest, the powerful arm of section 2036(a) pulls into the gross estate the full value of the transferred property, not merely the value of the remainder interest.

The majority accepts the view of the estate that the decedent "sold" only the remainder interest to Vaparo. This view of section 2036 sanctions tax evasion: It enables strategic segmentation of the property into multiple interests, with "adequate and full consideration" now required only for a specific transferred segment, rather than the indivisible whole. Such an interpretation of section 2036(a) thwarts its very purpose, enabling taxpayers to avoid paying estate taxes on property while retaining the income benefits of ownership. I would affirm the tax court's holding that "adequate and full consideration" assesses whether the consideration received is equal to the value of the property that would have remained in the estate but for the transfer, not whether it is commensurate with the value of the artfully separated portion of the property technically transferred.

## II.

The well-reasoned case law construing section 2036(a) supports the ruling of the tax court. That law correctly tests the adequacy of the consideration received by a taxpayer against the amount that otherwise would be included in that taxpayer's

gross estate.  The majority distinguishes these cases by focusing on irrelevant distinctions, and overlooks the commanding principle that a taxpayer who fails to convey all interests in an asset, continuing to derive some benefit from the asset until death, must include the entire asset in the taxpayer's estate.

In Gradow v. United States, 11 Cl. Ct. 808 (1987), aff'd, 897 F.2d 516 (Fed. Cir. 1990), the surviving spouse transferred her full community property interest into a trust that held all of the couple's community property.  Thereafter, the trust paid her all of the trust income during her life, and distributed the entire corpus of the trust to her son upon her death.  Gradow's executor asserted that decedent's retained life interest was received in exchange for adequate and full consideration, so that none of the trust's assets were includable in her gross estate.  The court disagreed, holding that the consideration paid by the decedent had to cover not only the remainder interest that was left to her son in the trust, but also her half of the underlying community property.

Other courts have acknowledged and followed this rule.  See United States v. Past, 347 F.2d 7 (9th Cir. 1965) (consideration decedent received from trust had to be measured against the total value of the property she contributed to the trust, not only against the remainder interest in the property); United States v. Allen, 293 F.2d 916 (10th Cir. 1961) (decedent who received most of trust's income for life but before death sold her remainder interest to her children had to include the value of the trust assets corresponding to the percentage of the trust's income that she received); Estate of Gregory v. Commissioner, 39 T.C. 1012, 1016 (1963) (decedent who received a life estate in exchange for transferring property to a trust failed to qualify for exception because "[t]he statute excepts only those bona fide sales where the consideration received was of a comparable value which would be includable in the transferor's gross estate").

The paramount purpose of section 2036(a) is to prevent the depletion of estate assets when individuals retain the use and enjoyment of those assets until death.  In Commissioner v. Estate of Church, 335 U.S. 632, 69 S.Ct. 322 (1949), the Supreme Court emphatically noted that

> an estate tax cannot be avoided by any trust transfer
> except by a bona fide transfer in which the settlor,
> absolutely, unequivocally, irrevocably, and without
> possible reservations, parts with all of his title and
> all of his possession and all of his enjoyment of the
> transferred property.

Id. at 645.  D'Ambrosio clearly fails this requirement that all title, enjoyment, and possession of the transferred property be unequivocally halted.  Commenting on the forerunner to section 2036(a) more than a half century ago, the Supreme Court stated that the law

> taxes not merely those interests which are deemed to
> pass at death according to refined technicalities of

the law of property.  It also taxes inter vivostransfers that are too much akin to testamentary
dispositions not to be subjected to the same excise.

Helvering v. Hallock, 309 U.S. 106, 112, 60 S.Ct. 444, 448

(1940).

These cases clearly demonstrate that the concept of "adequate and full consideration," as used in sections 2035 through 2038, must be construed with reference to the special problems posed by trying to prevent testamentary-type transfers from evading estate tax.  The bona fide sale analysis, which exempts property from inclusion in the gross estate pursuant to section 2036(a), cannot focus merely on the value of the limited property interest that is sold.  It must also consider the property that would otherwise be included in the decedent's gross estate.

### III.

The estate asserts that the tax court erred because it misunderstood or disregarded the "economic reality" of a sale of a remainder interest.  To the contrary, it was precisely the tax court's awareness of the economic realities of a retained interest transaction that led it to follow well-established law. Executrix D'Ambrosio alleges that Gradow is inapposite and, in any event, was erroneously decided.  She states that

> if the Decedent had retained and invested the dividends from the Vaparo Stock and from the annuity payments received during her life, the potential value of her gross estate as a result of the sale would be worth no less on the date of her death, than if she had never sold the remainder interest in the Vaparo Stock or if she had sold the entire interest in the Vaparo Stock and invested the proceeds therefrom for the rest of her life.

Appellant's brief at 11.

This view ignores the very reason for section 2036(a). Its purpose is precisely to prevent taxpayers from retaining the practical benefits of asset ownership during their lifetime while divesting themselves for estate tax purposes of a portion of that property.  As the court in Gradow correctly explained:

> [The "economic reality" argument] flies squarely in the face of the Supreme Court's analysis as to the assumptions and purposes behind 2036(a).  [T]he Court has taught that while tax limitation is perfectly legitimate, § 2036(a) is a reflection of Congress' judgment that transfers with retained life estates are generally testamentary transactions and should be treated as such for estate tax purposes.  The fond hope that a surviving spouse would take pains to invest, compound, and preserve inviolate all life income from half of a trust, knowing that it would thereupon be taxed without his having received any lifetime benefit,

is a slim basis for putting a different construction on § 2036(a) than the one heretofore consistently adopted.

11 Cl. Ct. at 815–816.

Even if the annuity decedent received were not an attempt to deplete her property for estate tax purposes, courts have consistently held that section 2036(a) does not exempt transfers of property in which the taxpayer retains an income interest in his or her underlying assets. As the Tenth Circuit concluded in Allen:

It does not seem plausible . . . that Congress intended to allow such an easy avoidance of the taxable incidence befalling reserved life estates. This result would allow a taxpayer to reap the benefits of property for his lifetime and, in contemplation of death, sell only the interest entitling him to the income, thereby removing all of the property which he has enjoyed from his gross estate. . . . [I]n a situation like this, Congress meant the estate to include the corpus of the trust or, in its stead, an amount equal in value.

293 F.2d at 918 (citations omitted).

IV.

I would affirm the decision of the tax court. I respectfully dissent.