ESTATE OF Cyril I. MAGNIN, Deceased; Donald Isaac Magnin, Executor, Petitioners–Appellants,

v.

COMMISSIONER OF INTERNAL REVENUE, Respondent–Appellee.

No. 96–70578.

United States Court of Appeals, Ninth Circuit.

Argued and Submitted Nov. 6, 1998.

Decided July 13, 1999.

Jerome B. Falk, Jr., Stuart S. Lipton, Douglas A. Winthrop, Denise M. Riley, Howard, Rice Nemerovski, Canady, Falk & Rabkin, San Francisco, California, for the appellant.

Gilbert S. Rothenberg and Pamela C. Berry, United States Department of Justice, Washington, D.C., for the appellee.

Before: SCHROEDER and THOMAS, Circuit Judges, and MOSKOWITZ, District Judge.[1]

SCHROEDER, Circuit Judge:

This tax appeal concerns the interpretation of Section 2036 of the Internal Revenue Code, which imposes an estate tax on the full value of property that a decedent transferred during his life while retaining a life interest. The section contains an exception for transfers for which the decedent had received full and adequate consideration. *See* 26 U.S.C. § 2036(a).

The major issue we must decide is how to measure whether the decedent, Cyril Magnin, received full and adequate consideration under an agreement entered into between Cyril and his father, Joseph Magnin. In the agreement, Joseph promised to bequeath Cyril the life and voting interest of Joseph's stock in the family corporations, in exchange for Cyril's promise to bequeath Cyril's remainder interest in the family corporations to Cyril's children. If Cyril did not receive full and adequate consideration, the consequences are substantial, for the Commissioner of the Internal Revenue Service has assessed an estate tax deficiency approaching two million dollars.

The Tax Court held that the adequacy of the consideration for the transfer should be measured by the fee-simple value of the stock at the time of the transaction, not by the value of the remainder interest the

---

1. Honorable Barry Ted Moskowitz, United States District Court Judge for the Southern District of California, sitting by designation.

children would receive. The Tax Court relied on our decision in *United States v. Past,* 347 F.2d 7 (9th Cir.1965), which appellant, the Estate of Cyril Magnin ("Estate"), contends does not control. We agree with the Estate, and reverse the Tax Court. We remand for further findings on the value, at the time of the transaction, of both the remainder interest transferred by Cyril and the life estate received by him.

### Background

The facts are extensive and involve some family intrigue. The Tax Court recounted the facts in detail in its opinion. *See* 71 T.C.M. (CCH) 1856, 1856–61, 1996 WL 24745 (1996). We summarize them here.

Joseph Magnin owned an upscale clothing store called Joseph Magnin Co., Inc. ("JM"). He and his son, Cyril, disagreed about how to run JM. In 1937, Joseph, though retaining the title as president of JM, handed over JM's reins to Cyril. In 1940, Joseph, Cyril, and a friend formed a Nevada Corporation called "Specialty Shops, Inc." ("Specialty") whose immediate purpose was to open a JM store in Reno.

Joseph was very close to Cyril's wife, Anna. After she died unexpectedly in 1948, Cyril began dating. In 1951, both Joseph and Cyril were concerned about the future of the business. Joseph worried about the business staying in the family and did not want Cyril to give or leave stock to any of the women he dated. Cyril worried that when his father died Cyril would lose control of the company, which Cyril valued highly for social, political, and business reasons.

On October 31, 1951, Joseph and Cyril executed a document ("Agreement") concerning their JM and Specialty stock. At the time of the Agreement, Joseph held 28.26% of the voting power of JM and Cyril held 33.73% of the voting power. It appears that Cyril and Joseph jointly owned 50% of Specialty's stock. Both Cyril and Joseph held an option to purchase JM shares from an outside source. Cyril also held an option to purchase some of Joseph's stock after Joseph's death.

The Agreement, *inter alia,* provided that Joseph had to bequeath his JM and Specialty stock to Cyril as sole trustee for Cyril's life, during which time Cyril would have the sole right to vote the stock. Cyril had to will in trust all of his JM and Specialty stock to a bank trustee for the benefit of his three children. The Agreement also provided that if the corporations were sold, Cyril would create a trust of the proceeds received, under which he would retain a life estate in the income and the remainder would be distributed at Cyril's death to his children. Two supplementary agreements in 1952 did not alter the above terms. Both Joseph and Cyril complied with the Agreement in their respective wills. Joseph died in 1953.

After Cyril died in 1988, the Commissioner assessed an estate tax deficiency of $1,921,528. The Estate initiated this lawsuit. By amended answer, the Commissioner increased the deficiency by $157,-685. The Tax Court determined that the Agreement and its supplements were made at arm's length. 71 T.C.M. at 1862. Nonetheless, the Tax Court held that the entire value of the property that Cyril had transferred to the trust should be included in his estate because the value of the life estate Cyril received in Joseph's stock did not amount to "adequate and full consideration," under 26 U.S.C. § 2036(a), in exchange for the transfer of Cyril's property to the trusts. *Id.* at 1863. Moreover, the Tax Court held that for purposes of the offset allowed under 26 U.S.C. § 2043 for the consideration that Cyril received, the trust property must be valued as of the time of Cyril's death, while the consideration he received must be valued as of the time of the transfer, notwithstanding the substantial appreciation the property underwent in the intervening years. *Id.* at 1863–64. The Estate appealed.

### Analysis

#### A. Interpretation of Section 2036(a)

Section 2036(a) addresses the proper calculation of a decedent's gross estate if

the decedent had transferred property into a trust, under which the decedent retained a life estate. The section provides that generally, the IRS will include the value of the transferred property in the decedent's gross estate. The section, however, excepts from this general rule bona fide transfers that were made for full consideration. Section 2036(a) states, in pertinent part:

The value of the gross estate shall include the value of all property to the extent of any interest therein of which the decedent has at any time made a transfer (except in case of a bona fide sale for an adequate and full consideration in money or money's worth), by trust or otherwise, under which he has retained for his life ... (1) the possession or enjoyment of, or (2) the right to the income from, the property....

The parties dispute the proper interpretation of the parenthetical "adequate and full consideration" exception. The Commissioner contends that the Tax Court correctly held that "adequate and full consideration" must equal the value of the entire property transferred by the decedent into a trust, while the Estate asserts that the consideration need only amount to the remainder interest of the transferred property.

Until recently, courts had uniformly held that "adequate and full consideration" equaled the fee-simple value of the property transferred into the trust. *See, e.g., United States v. Allen*, 293 F.2d 916 (10th Cir.1961); *Gradow v. United States*, 11 Cl.Ct. 808 (1987), *adopted by* 897 F.2d 516 (Fed.Cir.1990); *Estate of Gregory v. Commissioner*, 39 T.C. 1012, 1963 WL 1488 (1963). These cases have been attacked by legal commentators. *See, e.g.*, Jacques T. Schlenger et al., *Cases Addressing Sale of Remainder Wrongly Decided*, 22 Est. Plan. 305 (1995). The tide has recently turned. Since the Tax Court ruled in the present case, both the Third Circuit and the Fifth Circuit have rejected the above line of cases and held that "adequate and full consideration" need only equal the value of the remainder interest transferred by the decedent. *See D'Ambrosio v. Commissioner*, 101 F.3d 309 (3d Cir.1996); *Wheeler v. United States*, 116 F.3d 749 (5th Cir.1997).

■ The Commissioner argues that this court held in *United States v. Past*, 347 F.2d 7 (9th Cir.1965), that "adequate and full consideration" equals the value of the entire property interest transferred to the trust. While *Past* did assume the rule that the Commissioner asserts, *Past* did not elaborate upon the rule or evaluate its merit. 347 F.2d at 12 (citing *Estate of Gregory*, 39 T.C. 1012, 1963 WL 1488). When a case assumes a point without discussion, the case does not bind future panels. *See Sakamoto v. Duty Free Shoppers, Ltd.*, 764 F.2d 1285, 1288 (9th Cir.1985); *see also Indian Oasis–Baboquivari Unified Sch. Dist. No. 40 v. Kirk*, 91 F.3d 1240, 1244 (9th Cir.1996). Moreover, in a later Ninth Circuit decision, *Estate of Christ v. Commissioner*, 480 F.2d 171, 172 (9th Cir.1973), we seem to have assumed a different rule than did the *Past* court. Under these circumstances, *Past* cannot be considered binding and we may consider the issue afresh.

We look first to the statute's language. The text of § 2036(a) is susceptible to differing readings. *Compare, Gradow*, 11 Cl. Ct. at 813 (finding that the "most natural reading" of the statute and "[f]undamental principles of grammar" dictate that "adequate and full consideration" must be measured against the entire property transferred to the trust), *with D'Ambrosio*, 101 F.3d at 314–15 (finding *Gradow* omitted significant portions of the section's language and concluding that the language "to the extent of any interest therein" indicates that "the gross estate shall include the value of the remainder interest, unless it was sold for adequate and fair consideration").

■ In our view, the better reading of the section supports the Estate's position. The parenthetical exception for transfers made for "adequate and full consideration"

immediately follows the phrase "to the extent of any interest therein of which the decedent has at any time made a transfer." We agree with *D'Ambrosio* that this language suggests that for the exception to apply, the decedent must have received adequate and full consideration for the remainder interest. 101 F.3d at 314–15. The Commissioner criticizes this reasoning, arguing that because one cannot carve out a life estate from a remainder interest, the "property" that has been "transferred" necessarily refers to the entire "interest therein." We reject this contention because we read the clause "under which he has retained for his life" as solely modifying "by trust or otherwise," rather than the previous clauses pertaining to property interests.

■ To read the statute otherwise would be to render the parenthetical exception meaningless surplusage. No rational person would ever purchase a remainder interest for the price of the full fee-simple interest in the same property. If such a transaction were to occur, the purchaser would likely· incur gift tax, which in these situations is calculated by comparing the consideration received to the value of the remainder interest in the property, *Wheeler*, 116 F.3d at 755. A transaction that would subject one party to gift tax would not be a "bona fide sale" under § 2036(a). We must interpret the statute to give effect to all of its parts. *See Northwest Forest Resource Council v. Glickman*, 82 F.3d 825, 833–34 (9th Cir. 1996).

The Commissioner suggests that the "adequate and full consideration" exception should have limited applicability because Congress viewed transactions involving the sale of a remainder interest as "inherently abusive." But the Commissioner cites nothing. that indicates that Congress, when it promulgated § 2036(a), viewed these transactions as "inherently abusive." Even if Congress did so view these transactions, the exception that Congress saw fit to include in the statute should not be rendered meaningless. *See*

*D'Ambrosio*, 101 F.3d at 313 ("Without some express indication from Congress, we will not presume it intended to eliminate wholesale the transfers of remainder interests.").

The Commissioner concedes that "adequate and full consideration" under the corresponding gift tax section, 26 U.S.C. § 2512(b), equals the value of the remainder interest. Section 2512(b) states:

> Where property is transferred for less than an adequate and full consideration in money or money's worth, then the amount by which the value of the property exceeded the value of the consideration shall be deemed a gift and shall be included in computing the amount of gifts made during the calendar year.

We find the interpretation of "adequate and full consideration" under the gift tax to constitute highly persuasive authority for the Estate's position. The Supreme Court, while interpreting this very phrase, has stated that " '[t]he gift tax was supplementary to the estate tax. The two are in pari materia and must be construed together.' " *Merrill v. Fahs*, 324 U.S. 308, 311, 65 S.Ct. 655, 89 L.Ed. 963 (1945) (quoting *Estate of Sanford v. Commissioner*, 308 U.S. 39, 44, 60 S.Ct. 51, 84 L.Ed. 20 (1939)). *Merrill* counsels against introducing needless complexity by interpreting identical phases in the gift and estate taxes differently "where obvious reasons do not compel divergent treatment." *Id.* at 313, 65 S.Ct. 655.

The Commissioner's reading of § 2036(a), when coupled with the interpretation that has been given to § 2512(a), would result in a lose-lose situation for the taxpayer who wishes to sell a remainder interest and a win-win situation for the Internal Revenue Service:

> If the taxpayer sells a remainder interest for its actuarial value as calculated under the Treasury Regulations, but retains a life estate, the value of the full fee interest in the underlying property will be included in his gross estate and the transferor will incur substantial es-

tate tax liability under section 2036(a). If the taxpayer chooses instead to follow *Gradow,* and is somehow able to find a willing purchaser of his remainder interest for the full fee-simple value of the underlying property, he will in fact avoid estate tax liability.... The purchaser, however, having paid the fee-simple value for the remainder interest in the estate, will have paid more for the interest than it was worth. As the "adequate and full consideration" for a remainder interest under section 2512(b) is its actuarial value, the purchaser will have made a gift of the amount paid in excess of its actuarial value, thereby incurring gift tax liability. Surely ... "this carr[ies] a good joke too far."

*Wheeler,* 116 F.3d at 759 (footnotes and citations omitted) (alteration in original).

The policy behind § 2036(a) further persuades us that "adequate and full consideration" must be measured by the value of the remainder interest. Both parties and the Tax Court agree that the purpose underlying the section is to prevent the depletion of the decedent's gross estate. No depletion of the decedent's gross estate occurs when the adequacy of the consideration is measured by the value of the remainder interest. The consideration for the remainder interest usually appreciates so that at the time of a decedent's death, its value is in most cases roughly commensurate to the value of the property absent the transfer.

The Commissioner, citing *United States v. Righter,* 400 F.2d 344 (8th Cir.1968) (Blackmun, J.), argues that whether depletion has occurred must be measured by comparing the value of decedent's gross estate ·if he had died immediately before the transfer, with the value of decedent's gross estate if he had died immediately after the transfer. The Commissioner cites to no persuasive authority that supports this immediately before/immediately after comparison. *Righter* merely holds

that the consideration received ought to be valued at the time of the transaction; it says nothing about when the value of the decedent's gross estate ought to be measured. *Id.* at 348.

The Commissioner's position also defies common sense because a party who is selling his remainder interest in a bona fide arm's length transaction is unlikely to have a life expectancy of one day. On average, persons engaging in these transactions will have a life expectancy comparable to the standard mortality tables, which Congress has mandated be used to value remainder interests and life estates, *see* 26 U.S.C. § 7520(a)(1); *see also* 26 C.F.R. § 20.2031–7.[2] Thus, if the consideration for the remainder is actuarially accurate at the time of the transfer, by the time the decedent reaches his actuarially predicted date of death, his estate will not be depleted, but will be comparable to what it would have been had the transaction never occurred. The Commissioner would include in the estate the full value of property whose remainder is sold *plus* the full amount of the invested consideration from the sale of the remainder. The Commissioner's failure to take into account the time value of money would result in the overtaxation of estates, rather than the depletion of them.

The Commissioner, quoting *Gradow,* 11 Cl.Ct. at 816, argues that "[t]he fond hope that [Cyril] would take pains to invest, compound, and preserve inviolate all life income from ... a trust ... is a slim basis" for the Estate's interpretation of § 2036. The Estate's interpretation, however, does not rest on any assumption that the trust proceeds would be invested rather than spent. *See D'Ambrosio,* 101 F.3d at 316. If an individual sells the remainder interest of Blackacre, invests the proceeds, and then lives as long as the actuarial tables predict, when the individual dies, the appreciated consideration received for

---

2. In "exceptional" cases, as when a life tenant's actual life expectancy is less than one year, courts permit a departure from the ta-
bles. *See Bank of California v. United States,* 672 F.2d 758, 759–60 (9th Cir.1982) (citations omitted).

Blackacre's remainder should be commensurate to the value of Blackacre. *See D'Ambrosio,* 101 F.3d at 316; *Wheeler,* 116 F.3d at 762. If the individual in this Blackacre transaction instead decided to squander the proceeds from the sale of Blackacre's remainder rather than invest them, the situation would be no different than if the person had either sold Blackacre outright or invaded the principal periodically, and squandered that money. *See D'Ambrosio,* 101 F.3d at 316; *Wheeler,* 116 F.3d at 762–63.

Looking both to the language of the statute and to the principle that time appreciates value, we hold that "adequate and full consideration" is measured against the actuarial value of the remainder interest rather than the fee-simple value of the property transferred to the trust.

**B. The Conclusiveness of the Finding of an Arm's Length Transaction**

The Estate asserts that the Tax Court's finding that the transaction at issue was at arm's length should end the inquiry, as it does in the gift tax realm, *see Estate of Friedman v. Commissioner,* 40 T.C. 714, 719, 1963 WL 1403 (1963), where arm's length transactions are presumed to be for adequate consideration. Our decision in *Past* explicitly rejected the Estate's argument. 347 F.2d at 12 n. 2. The Estate argues that *Past* does not constitute binding precedent because the *Past* court distinguished its holding under § 2036 from gift tax cases which, like this case, were purely arm's length transactions with no trace of donative intent. *See id. Past,* however, does not limit its holding to cases where some donative intent exists. Indeed, notwithstanding the reference to "donative intent," *Past* did not otherwise disturb the Tax Court's holding in that case that the transaction at issue was "a bona fide arms-length [sic] bargained-for transaction." *Id.* at 12. Moreover, *Past* framed the issue and its holding broadly: "The tax court seemed to assume that because the transfers were part of an arm's length transaction ... that, as a matter of law, there was sufficient consid-

eration for purposes of section 2036. We do not agree." *Id.*

■ The Estate also contends that Congress's post-*Past* unification of the estate and gift tax systems alters the basis for the *Past* decision. *See Hemme v. United States,* 476 U.S. 558, 561, 106 S.Ct. 2071, 90 L.Ed.2d 538 (1986). Although the Tax Reform Act of 1976 underscores the importance of a harmonious interpretation of the estate and the gift tax, the Supreme Court's pronouncement that the estate and gift tax "are in pari materia and must be construed together" preceded *Past* by over twenty-five years. *See Estate of Sanford v. Commissioner,* 308 U.S. 39, 44, 60 S.Ct. 51, 84 L.Ed. 20 (1939). *Past* considered and rejected the contention that the gift tax and the estate tax should be interpreted identically on this question. 347 F.2d at 12 n. 2. We are thus bound by *Past 's* holding that a finding of an arm's length transaction does not per se establish that the transfer was for "adequate and full consideration." Thus, we must review the Tax Court's alternative holding that the value of the life estate Cyril received was less than the remainder he transferred.

**C. The Value of the Consideration**

As an alternative to its holding that "adequate and full consideration" must equal the full value of the property transferred to the trust, the Tax Court held in a footnote that even if the proper measure of full consideration were the remainder interest, the Estate had not shown that Cyril had received adequate consideration for that interest. The Tax Court stated:

> Even if we were to hold that § 2036(a) requires receipt of adequate and full consideration for only the remainder interest, we would find that petitioner has not met its burden of proving that the value of the interest in Joseph's stock that Cyril received equaled the value of the remainder interest transferred. We conclude, *infra,* that the value of the interest received by Cyril is $43,878. The value of the remainder interest

transferred by Cyril is $42,000 according to [the Estate] and $122,997 under [Commissioner]'s calculations. These values were determined after the parties made certain posttrial adjustments to their expert reports. Although we need not determine the precise value of the remainder interest transferred by Cyril, we conclude that it was more than $43,-878. This conclusion is based on the evidence, including the expert witnesses' opinions and the values placed on JM and Specialty stock in gift and estate tax returns filed by Cyril and Joseph between 1948 and 1953.

71 T.C.M. at 1863 n.12. After discussing the factual dispute between the parties' experts about whether to add a control premium or a marketability discount to the stock Cyril received, as well as the appropriate standard and burdens, the Tax Court further stated:

> After considering the reports and testimony of both experts and all the other evidence in the record, we think that neither party has shown that the value of the interest received by Cyril should be greater or less than the $43,878 determined by the [Commissioner] in her notice of deficiency. Accordingly, we hold that [the Estate] is entitled to reduce the includable value of the trusts by $43,878 pursuant to section 2043(a).

*Id.* at 1864–65.

■ The Estate asserts that the Tax Court did not provide sufficient analysis for this Court to review the "even if" holding. We agree. As we have recently stated, "it is the obligation of the Tax Court to spell out its reasoning and to do more than enumerate the factors and leap to a figure intermediate between petitioner's and the Commissioner's." *See Leonard Pipeline Contractors, Ltd. v. Commissioner,* 142 F.3d 1133, 1135 (9th Cir.1998). The Tax Court should explain how it evaluated the evidence and reached its conclusion. *Id.* Here, the Tax Court only provided the "pieces of the puzzle" but did not divulge how it put them together. *Id.* Particularly because "adequate and full consideration"

need only be of "approximately equal value," *Estate of Davis v. Commissioner,* 440 F.2d 896, 900 (3d Cir.1971), the Tax Court should have determined the actual disparity between the values of the transferred remainder and the life estate Cyril received. Thus, we remand this case to the Tax Court for findings that explain how it determined the value of the respective property interests both transferred and received by Cyril.

The Estate, citing *United States v. Janis,* 428 U.S. 433, 442, 96 S.Ct. 3021, 49 L.Ed.2d 1046 (1976), also argues that the $43,878 valuation in the notice of deficiency of the life estate received by Cyril, is not entitled to a presumption of correctness, *Clapp v. Commissioner,* 875 F.2d 1396, 1403 (9th Cir.1989). *Janis* held that assessments that are "naked and without *any* foundation" are not presumed correct. 428 U.S. at 442, 96 S.Ct. 3021. This court has interpreted *Janis* to mean that the Commissioner must offer " 'some foundational support for the deficiency determination before the presumption of correctness attaches to it.' " *Foster v. Commissioner,* 756 F.2d 1430, 1439 (9th Cir.1985) (quoting *Weimerskirch v. Commissioner,* 596 F.2d 358, 361 (9th Cir. 1979)). Assessments that wholly lack foundation tend to occur in unreported income cases. *Id.* This is not such a case. Here, each side presented evidence that the real value of the life estate lay somewhere between $30,752 and $58,146. The valuation in the notice of deficiency is entitled to a presumption of correctness.

**D. The Time for Valuing Consideration**

The last issue we must consider is the appropriate time to value the consideration received by the decedent for purposes of the off set in 26 U.S.C. § 2043(a). Section 2043(a) provides that if the transferred property is pulled back into the estate under § 2036(a)(1), the amount pulled back into the estate is reduced by the amount of

consideration that was received for the property. Section 2043(a) states:

> [If a transfer under § 2036] is not a bona fide sale for an adequate and full consideration in money or money's worth, there shall be included in the gross estate only the excess of the fair market value at the time of death of the property otherwise to be included on account of such transaction, over the value of the consideration received therefor by the decedent.

The Tax Court calculated the offset by determining the value of the consideration at the time of the transaction. 71 T.C.M. at 1864–65. The Estate asserts that valuing the consideration at the time of the transfer, while valuing the property at the time of the decedent's death, produces an absurd and unfair result due to the appreciation of the property. The Estate proposes that we value the property at the time of death or adopt a proportional approach.

█ We held in *Past* that the consideration received by the decedent ought to be valued at the time of the transaction, 347 F.2d at 14 n. 6, and implicitly rejected the dissenting judge's contrary view, 347 F.2d at 16–18 (Ely, J. dissenting). The dissenting judge's in-depth discussion of the issue demonstrates that the issue was truly before the *Past* court and that *Past*'s holding on this point therefore controls.

*Past*'s holding on this issue is also correct as a matter of statutory interpretation. The Estate proposes that the court read "at the time of death" to modify both "property" *and* "consideration received" in lieu of the more natural reading that "at the time of death" solely modify "property." *Cf. Longview Fibre Co. v. Rasmussen*, 980 F.2d 1307, 1310–11 (9th Cir.1992).

The few courts that have discussed this issue more than conclusorily agree that consideration should be valued at the time of the transfer. The time of transfer is when the decedent in fact received the consideration, which reflected "the relative intensity of the social desire for it at that time," *Estate of Gregory v. Commissioner*, 39 T.C. 1012, 1021, 1963 WL 1488 (1963), and not "the post-transfer fortunes of income return, good or bad, during the ensuing years of [decedent]'s life," *United States v. Righter*, 400 F.2d 344, 348 (8th Cir.1968). Moreover, the valuation of the adequacy of the consideration in § 2036(a) is made at the time of the transfer. *Id.*

Alternatively, the Estate suggests that we calculate the offset using a proportional approach. This would require determining the percentage of the remainder interest's value that the decedent paid at the time of the transfer. At the time of death, the decedent's estate would include the value of the trust property reduced proportionally by the percentage paid at the time of the transaction. Although it would perhaps be most fair to both taxpayers and the government if a proportional approach were adopted, *Past*, 347 F.2d at 17 (Ely, J. dissenting), this approach is not the one Congress has adopted in this statute. Commentators who have recommended a proportional approach recognize this and advocate a legislative overhaul of the statute, rather than a different judicial interpretation of the existing section. *See* Karen C. Burke, *Valuation Freezes After the 1988 Act: The Impact of Section 2036(c) on Closely Held Businesses*, 31 Wm. & Mary L.Rev. 67, 144–45 (1989) (noting that Congress has adopted proportional rules in other sections); K. Jay Holdsworth et al, *Report on Transfer Tax Restructuring*, 41 Tax Lawyer 395, 410–11 (1988).

If the Tax Court again determines on remand that the life estate in Joseph's stock did not amount to adequate consideration for the remainder interest in Cyril's stock that Cyril transferred, the Estate's deficiency should be reduced by the amount of consideration received by Cyril at the time of the transaction.

The Tax Court's opinion is RE-VERSED, and the case REMANDED to the Tax Court for findings on the value, at the time of the Agreement, of both the

consideration received by Cyril and the interest transferred by Cyril.

REVERSED AND REMANDED.