**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS FOR THE NINTH CIRCUIT

MARVIN ROBERTS; EUGENE
VENT; KEVIN PEASE; GEORGE
FRESE,
                    *Plaintiffs-Appellants*,

v.

CITY OF FAIRBANKS; JAMES
GEIER; CLIFFORD AARON RING;
CHRIS NOLAN; DAVE
KENDRICK,
                    *Defendants-Appellees.*

No. 18-35938

D.C. Nos.
4:17-cv-00034-HRH
4:17-cv-00035-HRH

ORDER

Filed June 26, 2020

Before: Richard C. Tallman, Sandra S. Ikuta,
and N. Randy Smith, Circuit Judges.

Order;
Dissent by Judge VanDyke

# SUMMARY[*]

## Civil Rights

The panel denied a petition for panel rehearing and denied a petition for rehearing en banc on behalf of the court in an action in which the panel reversed the district court's order dismissing claims brought under 42 U.S.C. § 1983 and § 1985 on the ground that the claims were barred by *Heck v. Humphrey*, 512 U.S. 477 (1994).

In the previously published opinion, the panel held that where all convictions underlying § 1983 claims are vacated and no outstanding criminal judgments remain, *Heck* does not bar plaintiffs from seeking relief under § 1983.

Dissenting from the denial of rehearing en banc, Judge VanDyke, joined by Judge Ikuta, stated that in the face of controlling Supreme Court precedent, the split-panel majority in this case created a novel exception to reach a result inconsistent with *Heck*. Judge VanDyke wrote that now, in every situation where a criminal defendant's conviction is ministerially vacated without any judicial determination that the conviction was actually "invalid," this new exception will cast into doubt the *Heck* bar's applicability. Judge VanDyke stated that this inconsistency should have been considered en banc before cementing it as binding precedent in this circuit.

---

[*] This summary constitutes no part of the opinion of the court. It has been prepared by court staff for the convenience of the reader.

## COUNSEL

Anna Benvenutti Hoffmann (argued), Nick Brustin, Richard Sawyer, and Mary McCarthy, Neufeld Scheck & Brustin LLP, New York, New York; Mike Kramer and Reilly Cosgrove, Kramer and Associates, Fairbanks, Alaska; for Plaintiffs-Appellants Marvin Roberts and Eugene Vent.

David Whedbee, Jeffrey Taren, Tiffany Cartwright, and Sam Kramer, MacDonald Hoague & Bayless, Seattle, Washington; Thomas R. Wickware, Fairbanks, Alaska; for Plaintiffs-Appellants Kevin Pease and George Frese.

Matthew Singer (argued) and Peter A. Scully, Holland & Knight LLP, Anchorage, Alaska, for Defendant-Appellee City of Fairbanks.

Joseph W. Evans (argued), Law Offices of Joseph W. Evans, Bremerton, Washington, for Defendants-Appellees James Geier, Clifford Aaron Ring, Chris Nolan, and Dave Kendrick.

Samuel Harbourt, Orrick Herrington & Sutcliffe LLP, San Francisco, California; Kelsi Brown Corkran, Orrick Herrington & Sutcliffe LLP, Washington, D.C.; for Amici Curiae Scholars.

Steven S. Hansen, CSG Inc., Fairbanks, Alaska, for Amicus Curiae Tanana Chiefs Conference.

David B. Owens, Lillian Hahn, Benjamin Harris, and Emily Sullivan, The Exoneration Project, Chicago, Illinois, for Amici Curiae The Innocence Network, American Civil Liberties Union, and ACLU of Alaska Foundation.

**ORDER**

Judge Ikuta voted to grant the petition for rehearing en banc.    Judges Tallman and N.R. Smith recommended denying the petition for rehearing en banc.

The full court has been advised of the petition for rehearing en banc. A judge of the court requested a vote on en banc rehearing.  The matter failed to receive a majority of votes of non-recused active judges in favor of en banc consideration.  Fed. R. App. P. 35.

The petition for rehearing en banc is **DENIED**.

---

VANDYKE, Circuit Judge, joined by IKUTA, Circuit Judge, dissenting from the denial of rehearing en banc:

Decades ago, the Supreme Court ruled that a § 1983 plaintiff is generally barred from bringing a claim to "recover damages for [an] allegedly unconstitutional conviction or imprisonment, or for other harm . . . [that] would render a conviction or sentence invalid."  *Heck v. Humphrey*, 512 U.S. 477, 486–87 (1994).  The Court recognized just four discrete exceptions to what has become known as the "*Heck* bar" on such § 1983 claims—where the plaintiff can prove "that the conviction or sentence has been [1] reversed on direct appeal, [2] expunged by executive order, [3] declared invalid by a state tribunal authorized to make such determination, or [4] called into question by a federal court's issuance of a writ of habeas corpus . . . ."  *Id*. Drawing from the common law, the Court said that "[j]ust as a cause of action for malicious prosecution does not accrue until the criminal proceedings have terminated in the plaintiff's favor, so also a § 1983 . . . action for damages . . .

does not accrue until the conviction or sentence has been invalidated." *Id.* at 489–90.

The split panel decision in this case created an additional exception to the *Heck* bar that, as far as I can tell, is unprecedented—not only in our circuit, but across the federal courts. It did so by reinterpreting *Heck*'s *favorable* termination requirement into something less than even a *neutral* termination requirement. In doing so, it expressly refused to apply the "hoary principle[s]" adopted from the malicious prosecution context that were the express basis for the majority's decision in *Heck*. *Id.* at 486. Now, in every situation where a criminal defendant's conviction is ministerially vacated without any judicial determination that the conviction was actually "invalid," this new exception casts into doubt the *Heck* bar's applicability. This includes in the many states in our circuit that have statutes that automatically vacate some convictions once the defendant has served his sentence. *Heck* is a quarter-century old, and its better-established exceptions already bedevil federal courts across the country, including this one. The fact that no other court has conceived or applied the panel majority's new exception in over 25 years of applying *Heck* should be reason enough for this Court to rehear this case en banc before cracking this lid on Pandora's box.

## I.

The four § 1983 plaintiffs in this case were tried and convicted of murder in 1997. *Roberts v. City of Fairbanks*, 947 F.3d 1191, 1193–94 (9th Cir. 2020). Their prison sentences ranged from 30 to 77 years. *Id.* at 1194. Several years after their convictions, a man named William Holmes "confessed to his involvement in the murder and named Jason Wallace and three other men as the actual perpetrators of the crime." *Id.* Based in part on this confession, the

"[p]laintiffs filed post-conviction relief ('PCR') petitions in Alaska Superior Court in September 2013." *Id*. The state court determined that the PCR petitions alleged "a prima facie case of actual innocence," and as a result, the plaintiffs engaged in discovery for two years. *Id*. At the close of discovery, the parties participated in "a five-week evidentiary hearing from October through November of 2015." *Id*. At the conclusion of the hearing, the judge told the parties that he would reach a decision in six to eight months. *Id*. at 1195.

After the hearing but before a decision, the prosecutors extended an offer to plaintiffs in which they would "consent to vacating the convictions and dismissing the charges, but only if all four plaintiffs agreed to release the State of Alaska and the City of Fairbanks (and their employees) from any liability related to the convictions." *Id*. Rather than await the state court's ruling on their PCR petitions, the plaintiffs executed settlement agreements with the State of Alaska and the City of Fairbanks and filed the settlement agreements in the Alaska Superior Court. *Id*. The parties "jointly stipulated that the court would be asked to vacate [p]laintiffs' convictions." *Id.* The settlement agreement confirmed that "[t]he parties have not reached agreement as to [plaintiffs'] actual guilt or innocence." *Id*. Instead, the plaintiffs specifically "stipulate[d] and agree[d] that the original jury verdicts and judgments of conviction were properly and validly entered based on proof beyond a reasonable doubt." *Id*. The parties further "stipulate[d] and agree[d] that there [was] sufficient new evidence of material facts that a new trial could be ordered," and "that this [state] Court may immediately enter Orders vacating the Judgments of Conviction . . . and awarding each [plaintiff] the relief of a new trial for each of the charges for which [plaintiffs] were convicted." *Id*.

The state court held a settlement hearing on December 17, 2015 where all parties participated. *Id.*  At the hearing, the court stated that its duty was to "ministerially sign the orders necessary to [e]ffect the decision of the attorney general," and after concluding that the parties' settlement was "procedurally proper," the court acknowledged that it "had no authority to . . . review or to criticize" the decision made by the state attorney general to enter into this agreement. *Id.*  At the end of the hearing, the state "court vacated [p]laintiffs' convictions, the prosecutors dismissed all indictments, and [plaintiffs] were released from prison."[1] *Id.*  Plaintiffs also dismissed their pending PCR petitions. *Id.* at 1206 (Ikuta, J., dissenting).  The four plaintiffs have not subsequently been prosecuted, "and no new trial was ever ordered following the 2015 hearing." *Id.* at 1195.

Notwithstanding the terms of the settlement agreements and the parties' stipulations, the plaintiffs on December 7, 2017 filed a § 1983 cause of action—including a § 1983 deprivation of liberty claim and a § 1983 malicious prosecution claim—against the City of Fairbanks and four of its officers. *Id.* at 1207 (Ikuta, J., dissenting).  The defendants moved to dismiss, and the district court granted the motion and denied plaintiffs' request to amend their complaint. *Id.* at 1196.  Applying *Heck v. Humphrey*, the district court held "that vacatur of convictions pursuant to a settlement agreement was insufficient to render the convictions invalid" because "the parties' stipulate[d] that 'the original jury verdicts and judgments of conviction were properly and validly entered based on proof beyond a reasonable doubt.'" *Id.* (citation omitted).  The district court pointed out that "the Superior Court . . . vacate[d] plaintiffs'

---

[1] One of the plaintiffs was already on supervised parole but agreed to this arrangement along with the other three plaintiffs.

convictions pursuant to the settlement agreements and the stipulation.  The Superior Court did not declare their convictions invalid." *Id.*  Plaintiffs timely appealed. *Id.*

The primary question answered by the panel on appeal was "whether § 1983 plaintiffs may recover damages if the convictions underlying their claims were vacated pursuant to a settlement agreement." *Id.* at 1193.  The majority concluded that when "all convictions underlying § 1983 claims are vacated and no outstanding criminal judgments remain, *Heck* does not bar plaintiffs from seeking relief under § 1983." *Id.*  In reaching that conclusion, the majority acknowledged that the plaintiffs' vacatur-by-settlement in this case would not satisfy the common law's favorable-termination requirement, but opined that "*Heck*'s favorable-termination requirement is distinct from the favorable-termination element of [the common law] malicious-prosecution claim." *Id.* at 1201.

## II.

In *Heck v. Humphrey*, the Supreme Court addressed when someone who has been convicted of a crime may seek § 1983 damages for an alleged unconstitutional prosecution or imprisonment related to that conviction.  The Court held that a § 1983 complaint in that context "must be dismissed unless the plaintiff can demonstrate that the conviction or sentence has already been invalidated." *Heck v. Humphrey*, 512 U.S. 477, 487 (1994).  The Court provided four specific ways that a plaintiff could show the conviction had been "so invalidated": "that the conviction or sentence has been [1] reversed on direct appeal, [2] expunged by executive order, [3] declared invalid by a state tribunal authorized to make such determination, or [4] called into question by a federal court's issuance of a writ of habeas corpus." *Id.* at 486–87.  "A claim for damages . . . relat[ing] to a

conviction or sentence that has *not* been so invalidated is not cognizable under § 1983." *Id*. at 487. "[A]s a cause of action for malicious prosecution does not accrue until the criminal proceedings *have terminated in the plaintiff's favor*, so also a § 1983 cause of action for damages attributable to an unconstitutional conviction or sentence does not accrue until the conviction or sentence has been *invalidated*." *Id*. at 489–90 (emphasis added; citations omitted). The Court made clear that this "favorable termination" requirement, borrowed from the common law's malicious prosecution tort, was not merely an exhaustion requirement, but was an actual element of a § 1983 claim challenging wrongful prosecution or imprisonment.

Justice Souter inked a concurrence in *Heck* wherein he took issue with the Court's heavy reliance on the common-law tort of malicious prosecution. *Id*. at 491–503 (Souter, J., concurring). He had no problem with looking to the malicious prosecution tort as a "starting point" in determining when a § 1983 claim can be brought by someone convicted of a crime, but disapproved that the *Heck* majority had incorporated the tort's "favorable termination" requirement as an actual *element* of a § 1983 claim in this context. *Id.* at 492–98. Justice Souter argued that the four discrete "events" the majority said could demonstrate a prior conviction had been "invalidated" were not actually consistent with the historical understanding of a "favorable termination" in the malicious prosecution context. *Id.* at 496. According to Justice Souter, even the *Heck* exceptions might not, without more, qualify as a "favorable termination" as the tort was historically understood and applied. *Id.* Moreover, Justice Souter expressed alarm that if a § 1983 plaintiff is required to show his conviction was "invalidated" in a manner similar to the "favorable termination" requirement at common law—that is, if the

"invalidated" requirement is applied as an affirmative element of a § 1983 claim—then it would continue to bar a § 1983 suit even after the convicted person was no longer in custody and could no longer bring a habeas suit. *Id.* at 499–502.

The *Heck* majority did not leave Justice Souter's criticisms unanswered. First, the Court simply disagreed with Justice Souter's claim that the common law "favorable termination" requirement was dissimilar from the four specific "invalidating" events it listed. *Id.* at 484 n.4. But even if Justice Souter was right that not all of the four *Heck* exceptions historically would have permitted a plaintiff to bring a malicious prosecution claim, the majority said that would only mean the four exceptions should have been narrower. *Id.* (arguing that "even if Justice Souter were correct . . . [t]hat would, if anything, strengthen our belief that § 1983, which borrowed general tort principles, was not meant to permit such collateral attack").

Second, the Court squarely rejected Justice Souter's argument that the *Heck* bar should only apply to someone who is still incarcerated or can otherwise still bring a habeas action to challenge his conviction. "We think the principle barring collateral attacks—a longstanding and deeply rooted feature of both the common law and our own jurisprudence—is not rendered inapplicable by the fortuity that a convicted criminal is no longer incarcerated." *Id*. at 490 n.10.

Since *Heck*, the Supreme Court has continued to apply *Heck*'s favorable termination requirement as borrowed from the common law malicious prosecution context. A decade after *Heck*, the Court restated its *Heck* holding: "we held [in *Heck*] that where success in a prisoner's § 1983 damages action would implicitly question the validity of conviction or

duration of sentence, the litigant must first achieve favorable termination of his available state, or federal habeas, opportunities to challenge the underlying conviction or sentence." *Muhammad v. Close*, 540 U.S. 749, 751 (2004) (per curiam). Then, only a few years ago, the Supreme Court explained that "[i]n defining the contours and prerequisites of a § 1983 claim, including its rule of accrual, courts are to look first to the common law of torts." *Manuel v. City of Joliet*, 137 S. Ct. 911, 914 (2017). The Court cited *Heck* as an example, and noted "[s]ometimes, that review of common law will lead a court to adopt *wholesale* the rules that would apply in a suit involving the most analogous tort." *Id.* at 920–21 (emphasis added). And just last year, the Supreme Court again reviewed a § 1983 statute of limitations issue to resolve whether a claim accrues upon acquittal or when fabricated evidence is introduced. *McDonough v. Smith*, 139 S. Ct. 2149, 2153 (2019). The Court concluded that "[t]he statute of limitations for a fabricated-evidence claim . . . does not begin to run until the criminal proceedings against the defendant . . . have terminated in his favor." *Id.* at 2154–55. This result "follows both from the rule for the most natural common-law analogy (the tort of malicious prosecution) and from the practical considerations that have previously led this Court to defer accrual of claims that would otherwise constitute an untenable collateral attack on a criminal judgment." *Id.* at 2155. "Only once the criminal proceeding has ended in the defendant's favor, or a resulting conviction has been invalidated within the meaning of *Heck* . . . will the statute of limitations begin to run." *Id.* at 2158 (internal citation omitted).

## III.

The panel majority in this case divorced *Heck*'s favorable termination requirement from its common law

roots.    Taking inspiration from passing comments in *Rosales-Martinez v. Palmer*, 753 F.3d 890 (9th Cir. 2014) and *Taylor v. County of Pima*, 913 F.3d 930 (9th Cir. 2019), the panel majority concluded that a ministerial vacatur pursuant to a settlement agreement is a "favorable termination" within the meaning of *Heck*, and therefore the *Heck* bar doesn't apply.  *Roberts*, 947 F.3d at 1198–1203. But "neither [*Rosales-Martinez* nor *Taylor*] holds that a vacatur by settlement qualifies as a favorable termination under *Heck*."  *Id*. at 1211 (Ikuta, J., dissenting).

Rosales-Martinez sought damages under § 1983 for an allegedly unlawful conviction and imprisonment resulting from defendants' constitutional error.  753 F.3d at 891.  He alleged that after the constitutional error came to light while he was imprisoned, "the Nevada state courts recognized the constitutional error, granted his petition for a writ of habeas corpus, and ordered him freed."  *Id*.  He filed a § 1983 lawsuit nearly two years after the alleged order.  *See id*.  The district court dismissed his lawsuit on the ground that the two-year statute of limitations began to run when he first learned of the constitutional errors, and thus had already expired when he filed his claim.  *Id*. at 891.  On appeal, this Court reversed, concluding that "[p]ursuant to *Heck* . . . [plaintiff's] cause of action did not accrue until his conviction was held invalid."  *Id.*

*Rosales-Martinez* is somewhat confusing because the parties on appeal put forth contradictory views of what had actually happened to Rosales-Martinez's conviction in the state courts.  Rosales-Martinez alleged that the state court granted his habeas petition and then ordered him released. *Id*. at 894.  But relying on information submitted on appeal "at the eleventh hour," the defendants argued that the state court actually vacated the plaintiff's conviction and released

him as the result of a stipulated agreement: that plaintiff's conviction would be "vacated based on . . . cumulative errors" and the prosecution would recommend a sentence of time already served in exchange for Rosales-Martinez pleading guilty to one of the original crimes and dismissing his habeas petition. *Id*. at 894–95. It is not entirely clear therefore whose version of events the court in *Rosales-Martinez* was referencing when it concluded that "*Heck* therefore teaches that Rosales-Martinez's claims did not accrue until the Nevada court *vacated* those convictions on December 2, 2008." *Id*. at 896 (emphasis added).

The panel majority in this case highlights the above statement from *Rosales-Martinez* to assert that the court "implicitly held that vacating a conviction pursuant to a settlement agreement serves to invalidate the conviction under *Heck*." *Roberts*, 947 F.3d at 1200. But for several reasons, that significantly over-characterizes the *Rosales-Martinez* Court's consideration of vacatur as a means of invalidation.

First, it isn't clear which version of the parties' stories the *Rosales-Martinez* Court had in mind when it made this statement. If it was the plaintiff's version, then the case didn't involve vacatur-by-agreement at all because applying this version of the facts would result in a straightforward and uncontroversial application of *Heck*'s third type of favorable termination: "declared invalid by a state tribunal . . . ." *Heck*, 512 U.S. at 486. There is some indication that this was the case, since the Court in *Rosales-Martinez* didn't analyze the impact of the "more complicated picture of events than the simple allegation of [plaintiff's] complaint" until a later section of the opinion (Section V). *See* 753 F.3d at 897–99. Ultimately, because of the different facts presented by the government on appeal, the Court ordered

that the "viability and scope of Rosales-Martinez's § 1983 claim, in relation to *Heck v. Humphrey* and pursuant to *Jackson* should be evaluated by the district judge on remand." *Id.* at 899. Thus, "our decision in *Rosales-Martinez* to reverse the district court was not based on the finding that *Heck* permits a § 1983 action whenever a conviction has been vacated pursuant to a settlement agreement." *Roberts*, 947 F.3d at 1211 (Ikuta, J., dissenting).

Even if the court in *Rosales-Martinez* was referencing vacatur-by-agreement, that still would not support the rule announced in *Roberts*. As just noted, the *Rosales-Martinez* Court didn't ultimately decide the *Heck* bar was inapplicable in that case; it remanded it to the district court to analyze in the first instance. 753 F.3d at 899. Because of the factual confusion, it is not terribly surprising that *Rosales-Martinez* never analyzed whether vacatur-by-agreement counts as "invalidation" or a "favorable termination" under *Heck*. That issue wasn't even raised until the "eleventh hour" of the appeal, *id.* at 894, and was ultimately remanded to the district court to sort out. So if some stray statement by the *Rosales-Martinez* Court did equate vacatur-by-agreement with invalidation (which, again, it is not clear it did), the statement was made in passing and with no analysis. *See*, *e.g.*, *In re Magnacom Wireless, LLC*, 503 F.3d 984, 993–94 (9th Cir. 2007) ("In our circuit, statements made in passing, without analysis, are not binding precedent."); *Estate of Magnin v. C.I.R.*, 184 F.3d 1074, 1077 (9th Cir. 1999) ("When a case assumes a point without discussion, the case does not bind future panels."); *see also United States v. Paul*, 583 F.3d 1136, 1138 (9th Cir. 2009) (O'Scannlain, J., dissenting from the denial of rehearing en banc) ("'[C]ases that do not actually analyze the issue . . . and cases that erroneously rely on those cases for their implicit

assumptions' do not bind future panels.") (quoting in part *Guerrero v. RJM Acquisitions LLC,* 499 F.3d 926, 937 (9th Cir. 2007)).

Relying on *Rosales-Martinez* as somehow sanctioning or even previewing the rule applied by the *Roberts* majority is therefore an overreading of *Rosales-Martinez*.  The most that can be said is that *Rosales-Martinez* is not *inconsistent* with the *Roberts* rule.  But that can be said about most cases—even most cases applying *Heck*—because, like *Rosales-Martinez*, most of those cases do not actually consider and analyze whether a vacatur-by-agreement suffices to meet *Heck*'s favorable termination requirement.

*Taylor v. County of Pima*, 913 F.3d 930 (9th Cir. 2019), is a closer call.  In *Taylor*, "a jury convicted Louis Taylor . . . of 28 counts of felony murder" in 1972 "on the theory that he had started a deadly fire at a Tucson hotel."  *Id.* at 932.  While still in prison, Taylor in 2012 sought post-conviction relief based on new evidence that "arson did *not* cause the hotel fire."  *Id.* (emphasis in original).  Taylor entered into a plea agreement with the government in 2013 whereby his "original convictions were vacated and, in their place, Taylor pleaded no contest to the same counts, was resentenced to time served, and was released from prison."  *Id.*  Taylor then sued the County of Pima and the City of Tucson pursuant to § 1983 "alleging violations of his constitutional rights to due process and a fair trial."  *Id.*

The district court dismissed Taylor's § 1983 wrongful incarceration damages claim as barred by *Heck*.  *Id.* at 935–36.  On appeal, the panel majority said: "Here, Taylor's 1972 jury conviction has been vacated by the state court, so *Heck* poses no bar to a challenge to that conviction or the resulting sentence."  *Id.* at 935.  But the court observed that "Taylor's 2013 conviction, following his plea of no contest, remains

valid," and "all of the time that Taylor served in prison is supported by the valid 2013 state-court judgment."  *Id.*  The *Taylor* Court thus affirmed the district court's dismissal of Taylor's § 1983 claim as *Heck*-barred.  *Id.* at 936.

The *Roberts* majority is correct that the *Taylor* majority did equate a vacatur-by-settlement with a favorable termination under *Heck*.  *See id.* at 935 ("Here, Taylor's 1972 jury conviction has been vacated by the state court [under a vacatur-by-agreement settlement], so *Heck* poses no bar to a challenge to that conviction or the resulting sentence.").  *Taylor* is the strongest support for the holding in *Roberts*.  But *Taylor*'s conclusion that the *Heck* bar did not apply to Taylor's vacated conviction was classic dicta—it made no difference in the case because Taylor was still *Heck*-barred by his second conviction and his § 1983 claims were dismissed.  Moreover, "*Taylor* offered no reasoning to support its offhand comment" that a vacated conviction is not barred by *Heck*, and there is no analysis in *Taylor* of why a vacatur-by-agreement satisfies *Heck*'s favorable termination requirement.  *Roberts*, 947 F.3d at 1212 (Ikuta, J., dissenting).  There is just the one sentence from *Taylor* that the *Roberts* majority relies on.  That is it.

So *Taylor* certainly did not mandate the result in *Roberts*. The *Taylor* majority's passing statement "was not necessary to its holding," *id.*, was unreasoned, and did not affect the ultimate result in *Taylor* because Taylor's 2013 plea barred his § 1983 claim under *Heck*.  Its sentence was dicta "made in passing, without analysis," and "not binding precedent." *In re Magnacom Wireless, LLC*, 503 F.3d at 993–94; *see also United States v. Johnson*, 256 F.3d 895, 915 (9th Cir. 2001).  But unlike in *Taylor*, the "*Roberts* exception" is now binding precedent—because of *Roberts*, the law in the Ninth

Circuit is now that a vacatur-by-agreement of the parties is a favorable termination under *Heck*.

The practical effects of the negotiated vacatur in this case also reveal how the *Roberts* exception differs from an overturned conviction on appeal, executive expungement, and direct invalidation by an authorized court. For instance, the § 1983 plaintiffs agreed that their convictions were "properly and validly" secured in exchange for their release from custody. While the plaintiffs can rightfully assert that release from custody was a favorable result, they also expressly agreed that the convictions were "properly and validly" obtained. This concession by the plaintiffs that their convictions were valid cannot mean that their convictions were invalidated—it means the opposite. At best, this compromise constituted a neutral disposition of the convictions because the convictions were vacated without any discussion as to the plaintiffs' actual guilt or innocence. At worst, this was a less-than-neutral termination of the convictions because all parties agreed that the convictions were still valid—just as someone who would have agreed to time-served in exchange for release from prison.[2]

## IV.

The Supreme Court has not stepped away from *Heck*'s favorable termination requirement, and the *Roberts* exception is irreconcilable with *Heck*'s favorable termination rule. "[V]acatur by settlement is not—and never was—recognized as a favorable termination at common law,

---

[2] Even if this Court wanted to add the *Roberts* exception to the four *Heck* exceptions, this was not the proper case to do so. Here, all parties agreed the convictions *were* valid. Under the plain language of *Heck*, the still-valid convictions bar the plaintiffs' § 1983 claims.

so the majority's attempt to recognize it as a fifth means of favorable termination under *Heck* squarely contradicts *Heck*'s reliance on the 'common law of torts.'" *Roberts*, 947 F.3d at 1214–15 (Ikuta, J., dissenting) (citing *Heck*, 512 U.S. at 483). Two facts amplify this inconsistency.

First, the *Roberts* majority does not dispute that its rule is inconsistent with the common law's favorable termination rule from the malicious prosecution context. *Id*. at 1201. Instead, the majority insists that "*Heck*'s favorable-termination requirement is distinct from the favorable-termination element of a malicious-prosecution claim." *Id.* But this is not a faithful application of *Heck*—especially as illuminated by the back-and-forth between the Court and Justice Souter's concurrence. Justice Souter's entire complaint in *Heck* was that the Court was too extensively and too woodenly borrowing from the malicious prosecution tort in interpreting § 1983. Tellingly, the Court in *Heck* was unapologetic and responded tit-for-tat to "Justice Souter's critici[sm of] our reliance on malicious prosecution's favorable termination requirement." *Heck*, 512 U.S. at 484 n.4.

In arguing that the *Heck* and malicious prosecution favorable termination requirements are different, the *Roberts* majority relies primarily on the argument that *Heck*'s four specific exceptions do not map on perfectly to the historical understanding of the malicious prosecution tort. 947 F.3d at 1201–03. But this does no more than rehash Justice Souter's argument in *Heck*. *See Heck*, 512 U.S. at 496 (Souter, J., concurring). The Supreme Court forcefully rejected that argument then (*see id.* at 484 n.4), and we can't resurrect it to reinterpret *Heck*'s favorable termination requirement now. Especially when, just a few years ago, the Supreme Court reiterated that in *Heck* it had previously

"adopt[ed] *wholesale* the rules that would apply in a suit involving the most analogous tort"—i.e., the malicious prosecution tort. *Manuel*, 137 S. Ct. at 920–21 (emphasis added).

Second, the fact that, in the quarter century since *Heck* was decided, no other court has applied the *Roberts* exception to the *Heck* bar is good reason to think carefully before we lock that in as the law in our circuit. As explained, until *Roberts*, none of this Court's precedents *required* that a vacatur-by-agreement be interpreted as a favorable termination under *Heck*. There are probably many good reasons for that, but one very serious concern comes to mind. Many states in our circuit allow for convictions to be automatically vacated after an offender has served his sentence. *See*, *e.g.*, Cal. Penal Code § 1203.4 (describing how verdicts may be vacated once a defendant fulfills the conditions of probation); Cal. Penal Code § 1203.41 (outlining how defendants may change their pleas and set aside a guilty verdict without a judicial determination that the plea or verdict was invalid); Wash. Rev. Code Ann. § 9.94A.640(1) (detailing how defendants can vacate their record of conviction after completing their sentences); Or. Rev. Stat. § 137.225 ("[A]t any time after the lapse of three years from the date of pronouncement of judgment, any defendant who has fully complied with and performed the sentence of the court . . . may apply to the court where the conviction was entered for entry of an order setting aside the conviction."); Ariz. Rev. Stat. § 13-905 ("[E]very person convicted of a criminal offense, on fulfillment of the conditions of probation or sentence and discharge by the court, may apply to the court to have the judgment of guilt set aside."); Ariz. Rev. Stat. § 13-909 (allowing sex trafficking victims to vacate certain convictions); Nev. Rev. Stat. § 179.247 (providing certain nonviolent offenders with

the option of vacating their judgment and sealing their records of conviction); Haw. Rev. Stat. § 712-1209.6 (giving convicted prostitutes the ability to vacate their convictions); Wash. Rev. Code Ann. § 10.05.120 (instructing courts to dismiss charges after the defendant successfully completes a deferred prosecution program); Mont. Code. Ann. § 46-16-130 (requiring automatic dismissal of prosecution upon compliance with the terms of a pre-trial diversion program); Nev. Rev. Stat. § 174.033 (mandating the dismissal of charges following a defendant's completion of "the terms and conditions of a preprosecution diversion program"); Or. Rev. Stat. § 135.891 (confirming that criminal charges will be dismissed with prejudice when a defendant fulfills the requirements of a diversion agreement); Ariz. Rev. Stat. § 11-361 ("[T]he county attorney of a participating county may divert or defer, before a guilty plea or a trial, the prosecution of a person who is accused of committing a crime . . . ."); Haw. Rev. Stat. § 853-1 (deferring further proceedings when a defendant enters a guilty or nolo contendere plea to allow the defendant to participate in a deferred prosecution program that requires dismissal of the criminal charges upon completion of the program); Alaska Stat. § 12.55.078 (permitting deferred adjudication wherein a defendant serves a term of probation in exchange for the dismissal of the criminal proceedings); Mont. Code. Ann. § 46-18-1104 (describing the conditions for expungement of misdemeanors); Idaho Code § 19-2604 (authorizing courts to terminate a sentence, set aside a guilty plea or conviction, and dismiss the case if the court determines "there is no longer cause for continuing the period of [defendant's] probation").

Perhaps anticipating this issue, the Second Circuit and Third Circuit have rejected the argument that a mere neutral termination of a conviction can overcome the *Heck* bar. In

the Second Circuit, petitioner Roesch participated in accelerated pretrial rehabilitation, and after he successfully finished "the two-year probationary period, the State Court dismissed the charges against him." *Roesch v. Otarola*, 980 F.2d 850, 852 (2d Cir. 1992). Roesch then filed a § 1983 action seeking damages and alleging in part that "various parties conspired to cause his arrest and incarceration without probable cause." *Id.* The Second Circuit held "that a dismissal pursuant to the Connecticut accelerated pretrial rehabilitation program is not a termination in favor of the accused for purposes of a civil rights suit." *Id.* at 853. "A person who thinks there is not even probable cause to believe he committed the crime with which he is charged must pursue the criminal case to an acquittal or an unqualified dismissal, or else waive his section 1983 claim." *Id.*

Similarly, in the Third Circuit, petitioner Petit participated in the Accelerated Rehabilitative Disposition (ARD) program wherein he avoided trial, served no jail time, and received an expungement of his record after completing a probationary period. *Gilles v. Davis*, 427 F.3d 197, 209 (3d Cir. 2005). Petit then brought a § 1983 action against public officials seeking damages. *Id.* at 203, 208–09. The Third Circuit applied the *Heck* bar, *id.* at 209–10, and held that "the ARD program is not a favorable termination under *Heck*." *Id.* at 211.

The reasoning in *Roesch* and *Gilles* aligns with *Heck's* favorable termination requirement as described in Judge Ikuta's dissent in *Roberts*, not the majority's decision. The *Roberts* decision will, at worst, require this Court in future panels to reach the opposite conclusion as our sister circuits with regard to § 1983 claims related to convictions that have been "invalidated" by state expungement statutes or good-

behavior programs.  At best, future panels will be required to creatively cabin *Roberts* or "'impermissibly risk parallel litigation and conflicting judgments.'"  *Roberts*, 947 F.3d at 1208 (Ikuta, J., dissenting) (quoting *McDonough*, 139 S. Ct. at 2160).  Even though "one purpose of the favorable-termination rule is to avoid the risk that a criminal conviction could be deemed valid in the criminal context and invalid in the civil context," the *Roberts* exception now requires this Court to engage in judicial gymnastics to determine whether a § 1983 plaintiff may attack a conviction that has not actually been declared invalid by an authorized state tribunal.  *Id*. at 1213 (Ikuta, J., dissenting) (citing *Heck*, 512 U.S. at 484–85).

## V.

"*Heck* makes clear that plaintiffs 'must' show that their convictions were terminated in one of four specific ways," and "[v]acatur by settlement is not on the list . . . ."  *Roberts*, 947 F.3d at 1213–14 (Ikuta, J., dissenting).  Here, "[n]o court has ruled on the validity of the plaintiffs' prior convictions or made a finding as to the plaintiffs' guilt or innocence."  *Id*. at 1209–10 (Ikuta, J., dissenting).  Instead, the plaintiffs expressly agreed that their convictions were "validly entered based on proof beyond a reasonable doubt."  *Id*. at 1203.  Because nothing in the record shows that the convictions are invalid (it shows just the opposite), "*Heck* precludes plaintiffs from bringing a § 1983 action . . . ."  *Id*. at 1212 (Ikuta, J., dissenting).

In the face of controlling Supreme Court precedent, the split-panel majority in *Roberts* created a novel exception to reach a result inconsistent with *Heck*.  We should have considered this inconsistency en banc before cementing it as binding precedent in our circuit.  I respectfully dissent from the denial of rehearing en banc.